Robert N. BEEMAN, Plaintiff-Appellee,

v.

James F. FIESTER, James F. Mazzulia, Jack Richards, Peter Kuttner, William Birch, Richard Clarkson, and Paul Vom Brack, Defendants-Appellants.

No. 87–2390.

United States Court of Appeals, Seventh Circuit.

Argued April 1, 1988.
Decided July 5, 1988.

Jane B. McCullough, Winston & Strawn, Chicago, Ill., for defendants-appellants.

Bruce A. Beeman, Scott, Beeman & Scott, P.C., Springfield, Ill., Aaron J. Kramer, Schiff Hardin & Waite, Chicago, Ill., for plaintiff-appellee.

Before BAUER, Chief Judge, POSNER and FLAUM, Circuit Judges.

FLAUM, Circuit Judge.

Robert Beeman, President of Local 666 of the International Alliance of Theatrical Stage Employees and Moving Picture Machine Operators of the United States and Canada ("Local 666") and a member of Local 666's executive board, filed suit in federal district court alleging that other members of Local 666's executive board (the defendants) engaged in conduct that violated the Racketeer Influenced and Corrupt Organizations Act (RICO). 18 U.S.C. § 1961 *et seq.* The district court determined that the complaint failed to state a claim upon which relief could be granted and dismissed the complaint under Federal Rule of Civil Procedure 12(b)(6). The defendants moved to amend the judgment to include sanctions under Federal Rule of Civil Procedure 11. The district court, after conducting a hearing, denied the defendants' motion to amend the judgment. The district court also denied defendants' motion to reconsider its ruling on this issue. We affirm the district court's decision denying sanctions under Rule 11.

I.

Beeman filed his RICO suit against the defendants on May 29, 1986. Beeman's complaint was a hefty 46 pages in length. The complaint alleged that the defendants wanted to require all Local 666 members to pay minimum annual membership dues of $200. The minimum dues, in Beeman's view, were part of defendants' plan to "dump" Local 666's present attorney and hire defendant, James F. Mazzulla, as both legal counsel and a full time business agent at an inflated salary. In order to attain this objective, the defendants allegedly issued voting ballots which were accompanied by financial information which was known by the defendants to be false. The complaint also claimed that Beeman had once been wrongfully unseated as president of Local 666, was reinstated by the union's international office, but was then threatened by the defendants with physical injury if he did not resign as president. The thrust of the complaint therefore was that the defendants sought to oust their opposition and use their positions on the executive board for their own purposes and to the union's detriment. The complaint sought both injunctive relief and damages.

On June 20, 1986 the defendants' counsel sent a letter to Beeman's attorney stating that he believed that the complaint was not well-grounded in fact or warranted by existing law. The letter advised that if the plaintiff had no legal authority to support the complaint, then the plaintiff should voluntarily dismiss it. The letter further advised that if the complaint was not dismissed the defendants would "spare no expense in holding you and the plaintiff personally responsible under Rule 11."

Plaintiff's counsel responded in writing to this letter on June 26, 1986, denying that the complaint was frivolous or unwarranted by existing law. In addition, he included a seven page legal memorandum, apparently prepared by his firm, which he believed supported the validity of the complaint. This letter also requested that defendants' counsel, after reviewing the complaint and the enclosed material, provide the legal authority that supported his view

that the complaint was frivolous. The defendants' counsel did not directly respond, but rather moved to dismiss the complaint under Rule 12(b)(6).

On February 6, 1987 the district court issued a memorandum opinion granting defendants' motion to dismiss and using language which can only be labelled as highly critical of the plaintiff's complaint. The district court stated that "what plaintiff has alleged is a good old-fashioned local union fight" and that the complaint was a "paroxysm of RICO rage." *Beeman v. Fiester*, No. 86 C 3831, mem. op. at 1, 2 (N.D.Ill. Feb. 6, 1987) [available on WESTLAW, 1987 WL 6593]. The district court concluded:

> Plaintiff's complaint does not state a RICO claim. Plaintiff has not alleged an enterprise. He has not alleged a pattern of racketeering. He has not adequately alleged predicate acts. He proceeds improperly by way of information and belief. He purports to allege extortion but fails to do so. The complaint is really nothing other than a nightmare.

*Id.* at 3.

The defendants moved pursuant to Federal Rule of Civil Procedure 59(e) to amend the judgment to include sanctions under Rule 11, including attorneys' fees of $13,473.96. The district court conducted a hearing on the appropriateness of Rule 11 sanctions on March 23, 1987. At this hearing the district court judge indicated that he had "grave doubts" about whether the suit was filed for a proper purpose, and therefore requested additional information. The plaintiff submitted material both before and after the hearing which included his own affidavit as well as affidavits from his counsel and from two attorneys from the firm of Schiff, Hardin & Waite ("Schiff") who were acting as local counsel. Plaintiff's affidavit explained in detail why he brought the suit and the alternatives he explored before filing the suit. His counsel's affidavit indicated that he had requested that attorneys from Schiff review the complaint before it was filed, that at least three attorneys from that firm had done so, and that they determined that it

was warranted by existing law. This was re-affirmed by the affidavits of Schiff's attorneys.

On July 21, 1987 the district court denied the defendants' motion to amend the judgment. The district court stated that it would "not undertake to recharacterize plaintiff's complaint other than as we already have in dismissing it." *Beeman v. Fiester*, No. 86 C 3831 (N.D.Ill. July 21, 1987) (order denying motion to amend judgment). The district court further stated:

> This lawsuit was brought in retaliation for some bareknuckle union infighting. It was not well grounded in fact and was not supported by existing law. But we are unable to conclude that plaintiff's counsel lacked a good faith belief that RICO could be extended to embrace the sort of intraunion tactics disclosed by the complaint. Upon reflection, while we have disapproved the lawsuit we conclude Rule 11 sanctions are not called for.

*Id.* The defendants moved for reconsideration of the denial of sanctions, arguing that the district court employed the wrong legal standards in its July 21, 1987 order. This motion was denied without explanation on August 3, 1987.

## II.

The defendants' argument is straightforward. They claim that the district court specifically made the findings necessary to conclude that Rule 11 was violated, but refused to impose sanctions. Rule 11 is composed of three prongs. First, the person who signs a pleading, motion or other paper ("the paper") certifies that the paper was not "interposed for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation (the "improper purpose clause")." Fed.R.Civ.P. 11. Second, the signer warrants that to the best of his or her "knowledge, information, and belief formed after a reasonable inquiry" that the paper is "well grounded in fact." *Id.* Finally, the signer also certifies that he or she has conducted a reasonable inquiry and that the paper is "warranted by existing

law or a good faith argument for the extension, modification, or reversal of existing law." *Id.* If any one of these three prongs has been violated, Rule 11 sanctions must be imposed. *Brown v. Federation of State Medical Bds.*, 830 F.2d 1429, 1433 (7th Cir.1987).

On appeal, we review findings of fact made by the district court under a clearly erroneous standard. *Brown*, 830 F.2d at 1434. We have frequently stated that the legal conclusion as to whether a violation has occurred on the specific facts is subject to *de novo* review, *id.*, but the application of this standard has proven more difficult than stating it. *See Federal Deposit Insurance Corp. v. Tekfen Construction and Installation Co.*, 847 F.2d 440, 442 (7th Cir.1988) (noting conflicting statements in this circuit as to our standard of review in Rule 11 cases). For example, we recently observed:

> [T]he decision whether there has been a violation is a judgment call. The Rule speaks of "reasonable" prefiling inquiry, the language of tort law. And although the definition of a frivolous legal position is itself a question of law, there will often be factual questions concerning the actual position the litigant took—questions on which the court of first instance has the leading role.

*In the Matter of Central Ice Cream Co.*, 836 F.2d 1068, 1072 (7th Cir.1987) (citations omitted).

■ Implementing these standards in the present case is particularly difficult. The defendants legitimately argue that there is a discrepancy between what the district court seems to have said and its refusal to amend its judgment to include Rule 11 sanctions. They claim that the district court explicitly found that two of Rule 11's three prongs were violated but

did not impose sanctions and that the district court applied an incorrect standard in its evaluation of the third prong. We cannot escape from the district court's language; it is the type of language which usually accompanies the imposition of sanctions. But because we find ample support for the denial of sanctions in this case and do not believe that the district court was merely disregarding our precedent, we affirm the district court's judgment.

### A.

The "improper purpose" clause is directed at abusive litigation practices. Schwarzer, *Sanctions Under the New Federal Rule 11—A Closer Look*, 104 F.R.D. 181, 195 (1985). The rule encompasses papers filed to cause unnecessary delay, or to increase litigation costs. It also applies to papers filed to harass. "Harassment under Rule 11 focuses upon the improper purpose of the signer, objectively tested...." *Zaldivar v. City of Los Angeles*, 780 F.2d 823, 832 (9th Cir.1986). This necessarily requires an inquiry into the party's reasons for filing the paper.[1] *Szabo Food Service, Inc. v. Canteen Corp.*, 823 F.2d 1073, 1083 (7th Cir.1987). Although the emphasis is on the party's motive for filing the paper, the party's conduct is judged on an objective standard based on the circumstances of the case. *Brown*, 830 F.2d at 1436. *See* Schwarzer, *Sanctions*, 104 F.R.D. at 195 (advising courts to determine a party's purpose from the record and surrounding circumstances and to avoid detailed, time-consuming inquiry into the party's subjective intent).

Here the district court judge specifically inquired about Beeman's purpose in filing the lawsuit at the hearing conducted pursuant to the defendants' motion for Rule 11

---

1. We have observed that "[s]ubjective bad faith or malice is important only when the suit is objectively colorable." *In re TCI Ltd.*, 769 F.2d 441, 445 (7th Cir.1985). *See Szabo Food Service, Inc. v. Canteen Corp.*, 823 F.2d 1073, 1083 (7th Cir.1987), *cert. dismissed,* —— U.S. ——, 108 S.Ct. 1101, 99 L.Ed.2d 229 (1988) (Rule 11 picks up malicious prosecution—"filing a colorable suit for the purpose of imposing expense on the defendant rather than for the purpose of winning."). *Compare Zaldivar v. City of Los Angeles,* 780 F.2d 823, 832 (9th Cir.1986) (leaving open the broad question of whether an attorney may be sanctioned if a paper is well grounded in fact or law but filed for an improper purpose). This is because frivolous papers filed for a harassing purpose are also sanctionable as not well grounded in fact or warranted by existing law.

sanctions. After listening to each party's presentations, the court noted that none of Beeman's counsel's comments had addressed the improper purpose clause and stated that he was concerned about "the good faith of the lawsuit." He then invited the parties to submit additional materials on this issue.

In response to this invitation Beeman submitted an affidavit which specifically denied that the complaint was filed to harass the defendants. More importantly, the affidavit carefully detailed step-by-step the course of events that culminated in Beeman's decision to file the lawsuit. According to his affidavit, Beeman initially opposed the proposed minimum fee assessment because he believed it would be detrimental to unemployed and retired union members. He later discovered that the defendants sought the minimum assessment in order to create a new union position and install their "own man," and further that they provided false information about the union's financial status in the material accompanying the voter solicitation. When Beeman attempted to combat this formally in his capacity as president, the defendants removed him from office. When the union's international office reinstated him after he was wrongfully unseated, he chose not to bring legal action. The defendants then threatened him with physical injury if he did not resign. At this point Beeman's affidavit states that he filed suit seeking injunctive relief and damages in order to carry out his duties to the union members, to protect his good name, and because he believed he was entitled to relief under federal and state law.

The defendants contend that Beeman's complaint was filed for an improper purpose and further, that the district court specifically made this finding when it stated that "[t]his lawsuit was brought in retaliation for some bareknuckle union infighting." This position implicitly equates "retaliation" with "improper purpose." Such a conclusion does not automatically follow from what the district court said. Most lawsuits are in some sense filed in "retaliation" for a perceived wrong committed by the named defendants. Still, the district

court's use of the term "retaliation" in its decision denying Rule 11 sanctions is grounds for pause, particularly in view of the court's stated concern about the "good faith of the lawsuit" at the hearing.

The defendants, however, offer little else besides this statement to support their improper purpose argument. They basically reason that because the lawsuit (in their view) was frivolous, it must have been brought to harass them. Beeman's affidavit clearly indicates that he believed that he had been repeatedly wronged by the defendants and was entitled to redress. If his purpose was proper but his legal theory was frivolous, then the other prongs of Rule 11, not the improper purpose clause, are implicated. In view of the record in this case and the inability of defendants to point to specific facts indicating an improper purpose, we believe that the district court's use of "retaliation" is properly construed to mean that the lawsuit was brought as a result of "some bareknuckle union infighting." We therefore do not find that the district court determined that Beeman's complaint was filed for an improper purpose and affirm the district court's denial of sanctions under the improper purpose clause.

## B.

The defendants' second argument on appeal is based on the district court's statement that Beeman's lawsuit "was not well grounded in fact." Rule 11 states that the signature of an attorney certifies that to the best of the attorney's knowledge and belief "formed after a reasonable inquiry" the paper is "well grounded in fact." The district court therefore invoked the specific language of Rule 11 to describe the complaint and yet declined to impose sanctions.

The crux of this prong of Rule 11, however, particularly at the motion to dismiss stage, is the reasonable inquiry requirement. Under the notice pleading system adopted by the Federal Rules of Civil Procedure, the plaintiff and his counsel are not required to know all the facts before they file a complaint; it is the purpose of dis-

covery to fill in the details. "The amount of investigation required by Rule 11 depends on both the time available to investigate and on the probability that more investigation will turn up important evidence; the Rule does not require steps that are not cost-justified." *Szabo*, 823 F.2d at 1083.

The district court did not make a finding that Beeman and his counsel failed to ascertain critical facts before his complaint was filed in this case, nor do the defendants identify such facts. The basis of the district court's statement that the complaint was not well grounded in fact is simply a pleading failure. The facts reasonably discovered by plaintiff and his counsel, as alleged, failed to fit within the pattern of facts to which RICO provides a remedy. This alone, however, cannot be the basis for sanctions; otherwise every complaint dismissed under Rule 12(b)(6) would be sanctionable.

This reading does not render the "well grounded in fact" prong meaningless. Rather, it correctly focuses the district court's attention for purposes of Rule 11 on the attorney's inquiry into the facts before he or she files a paper. In *Hays v. Sony Corp.*, 847 F.2d 412 (7th Cir.1988) we affirmed the imposition of sanctions against an attorney based in part on his failure to make a reasonable inquiry into the facts before he filed the complaint. The complaint asserted that the defendant made large profits from allegedly appropriating a work copyrighted by the plaintiff. There was, however, no evidence that the defendants had made any profits at all from the copyrighted material, and plaintiff's counsel made no effort to ascertain this fact before he filed the complaint. *See also Medical Emergency Serv. Assoc., S.C. v. Foulke*, 844 F.2d 391 (7th Cir.1988) (affirming imposition of sanctions where plaintiff failed to read contracts in his possession before filing his complaint); *Albright v. Upjohn Co.*, 788 F.2d 1217 (6th Cir.1986) (sanctions awarded where plaintiff failed to discover that the defendant had not manufactured the drugs giving rise to the claim); *Frazier v. Cast*, 771 F.2d 259 (7th Cir.1985) (affirming sanctions where district court's review of depositions indicated that factual assertions in a motion for summary judgment were incorrect and that counsel had relied on his client's representations without independently reviewing other deposition testimony). In this case both lead counsel and local counsel interviewed Beeman. In addition, Beeman's counsel represented that he conducted a pre-filing investigation which included a review of Local 666's financial statements, bylaws, minutes of meetings and election returns. Defendants do not contest this, nor is there any indication that the plaintiff should have ascertained additional facts before filing. Because a reasonable inquiry was made, we conclude that even if the complaint was not "well grounded" in the sense that it failed to state a claim upon which relief could be granted, the district court properly declined to impose sanctions on this basis.

### C.

The final issue in this case is whether the third prong of Rule 11 is satisfied. The signature of an attorney certifies that "to the best of his [or her] knowledge, information, and belief formed after a reasonable inquiry" that the paper is "warranted by existing law or a good faith argument for the extension ... of existing law."

The district court concluded that the plaintiff's complaint was not warranted by existing law but went on to state that "we are unable to conclude that plaintiff's counsel lacked a good faith belief that RICO could be extended...." Defendants correctly point out that the good faith requirement of the third prong of Rule 11 looks to the quality of the argument for the extension of a doctrine, not to the counsel's state of mind. The rule speaks in terms of the signer's "knowledge, information and *belief*," but it is well established that the standard is an objective one. *See, e.g., Brown*, 830 F.2d at 1435. "A good faith belief in the merit of a legal argument is an objective condition which a competent attorney attains only after a reasonable inquiry." *Zaldivar*, 780 F.2d at 881. Accordingly, although the district court's

statement is not as precise as it might have been, it is not an incorrect statement of the law.

Having determined that the district court used the correct legal standard, we turn to the court's application of the standard in this case. Beeman's counsel represents that he spent at least 40 hours investigating this case before filing the complaint. Further, the complaint was reviewed by attorneys at Schiff who specialize in the particular areas of law addressed in the complaint. They concluded that the alleged facts supported the view of the law asserted in the complaint. "Of course, the conclusion drawn from the research undertaken must itself be defensible. Extended research alone will not save a claim that is without legal or factual merit from the penalty of sanctions." *Zaldivar*, 780 F.2d at 831.

Defendants contend that regardless of the amount of pre-filing investigation, Beeman's complaint was legally frivolous. They emphasize the disparaging statements made by the district court when it dismissed the complaint and argue that no complaint so characterized could be a good faith argument for the extension of existing law. We have, however, independently reviewed the complaint and hold that the legal position taken therein was not frivolous.[2]

The defendants' final point is that Beeman never claimed to be seeking a modification or extension of RICO law, but rather always maintained that the complaint was warranted by existing law. They cite numerous district court opinions for the proposition that an attorney who seeks to advance a position that is not warranted by existing law must specifically indicate this to the court and his or her adversary. We have recently made a similar statement, noting that "[p]arties who want to distinguish or alter existing law must acknowledge its force; they may not pretend that the law favors their view and impose on the

court or their adversaries the burden of legal research to uncover the basic rule." *Central Ice Cream*, 836 F.2d at 1073. We believe, however, that the defendants urge an overly rigid application of the rule in this case. The pattern of racketeering requirement, as well as most of the other issues raised by Beeman's complaint, involve areas of law that were sufficiently hazy at the time the complaint was filed that it was difficult to determine the exact boundaries of the rules. Sanctions on this basis are not appropriate in this case. The judgment of the district court is AFFIRMED.

---

**2.** We also note that our conclusion is not at odds with the district court's ultimate disposition of this issue. The statements relied on by the defendants were made in the order dismissing the complaint and despite the district court's disclaimer to the contrary, we cannot help but believe that upon further reflection during the course of the Rule 11 proceedings, the district court tempered its view of the complaint.