Daniel RILEY, Kenneth G. Riley, Ray J. Riley, and Betty C. Riley, Plaintiffs-Respondents,

v.

Walter H. ISAACSON, Appellant,

Gary G. ROLANDO, a/k/a Gary G. Roland, Robert A. DeMott, a/k/a Robert A. De Mott, Michelle D. Hicks, a/k/a Michelle Rutzen, a/k/a "Mike" Rutzen, William E. Anderson, and Deborah K. Anderson, Defendants.

Court of Appeals

*No. 89-0750. Submitted on briefs December 29, 1989.—Decided April 4, 1990.*

(Also reported in 456 N.W.2d 619.)

On behalf of the appellant, the cause was submitted on the briefs of *Walter H. Isaacson* of *Hart, Sanborn & Isaacson* of Janesville.

On behalf of the plaintiffs-respondents, the cause was submitted on the brief of *Louis X. Mineau* of *Bolgrien, Ruth, Rentz, Mineau & Koepke, S.C.,* of Beloit.

SCOTT, J. Attorney Walter H. Isaacson appeals from a judgment ordering him to pay the respondents' costs and attorney's fees. The trial court determined that Isaacson failed in his investigative responsibilities under sec. 802.05, Stats., and that Isaacson's commencement of an action for attorney's fees under the frivolous claims statute and his continued defense of the claim which initiated the litigation were frivolous pursuant to sec. 814.025, Stats. We affirm the judgment based upon sec. 802.05, and therefore need not address the sec. 814.025 issue.

## FACTS

In June 1988, Isaacson was retained by Gary Rolando to defend Rolando against a claim of fraudulently selling a motor vehicle. The complaint, filed by Daniel, Kenneth, Ray and Betty Riley, alleged that Rolando, in an unlicensed partnership with Robert DeMott and Michelle Hicks, had defrauded the Rileys by selling to them through a newspaper ad a 1979 Mercury Zephyr of significantly poorer condition and higher mileage than advertised. The complaint also alleged that either the partnership or William and Deborah Anderson, the prior owners, had given the Rileys a fraudulent odometer statement reflecting lower than actual mileage. Finally, the complaint alleged damages, including attorney's fees, of $15,000.

At their initial meeting, Isaacson and Rolando reviewed the complaint. Rolando denied involvement in the auto sales business and in any sort of partnership with DeMott or Hicks. Rolando told Isaacson he had traded cars with the Andersons, receiving the Zephyr as

a "throw-in," and had then sold the Zephyr to DeMott, a casual acquaintance. Rolando denied knowing that the Zephyr was then advertised for resale, denied having anything to do with the sale and denied ever meeting the Rileys. Relying solely on Rolando's word, Isaacson answered for his client, not only denying the allegations of the complaint but also asserting that the Rileys' claims were frivolous under sec. 814.025, Stats.

Rolando and Isaacson failed to timely respond to interrogatories and demands for documents and on September 7, 1988, a hearing was held on the Rileys' motion to compel answers. At that time, the Rileys informed the court that Department of Transportation (DOT) records showed that in an eighteen-month period, twelve or fifteen motor vehicles had been titled in Rolando's name. Isaacson did not himself investigate DOT records after learning this information despite being granted an extension of time within which to answer the interrogatories and document demands.

Rolando was scheduled to be deposed on two separate dates in October 1988. Though noticed of those dates and, later, of the Andersons' scheduled depositions, neither Rolando nor Isaacson appeared at any of them.

In November 1988, Isaacson moved to withdraw as counsel for Rolando, asserting that his client's unavailability had thwarted adequate representation. Isaacson claimed Rolando had been difficult to contact, failing to return telephone calls and to keep appointments. Isaacson stated he also had been unable to contact Rolando's employer and DeMott because the phone numbers Rolando had supplied were not in service. On December 16, the motion to withdraw was granted. Rolando's answer was also struck.

The Rileys moved for a default judgment. A hearing on the motion was held on February 3, 1989, at which

DOT records were introduced showing that in a two-and-a-half year period Rolando and Hicks had titled in their names at least seventy-eight motor vehicles and had grossed nearly $40,000 from vehicle sales. On February 20, a default judgment for $1900 compensatory damages and $25,000 punitive damages was entered against Rolando.

Three weeks later, a hearing was held concerning both Isaacson's defense of the claims against Rolando and the frivolousness claim asserted by Isaacson against the Rileys and their attorney. The trial court concluded that Isaacson's claim for costs and attorney's fees pursuant to sec. 814.025, Stats., was itself frivolous under that statute. The court also concluded that Isaacson's continued defense of Rolando after September 7, 1988—the date Isaacson learned that DOT records showed Rolando had had a dozen vehicles titled in his name in the previous eighteen months—was also frivolous. The court found that Isaacson should have known the defense was without a reasonable basis in law or equity and was unsupported by a good faith argument for a change in existing law. *See* sec. 814.025(3). The court also concluded that both Isaacson's frivolousness claim and his defense of Rolando were frivolous under sec. 802.05, Stats. It found that Isaacson, having proceeded without making reasonable inquiry into Rolando's answers to determine if they were well-grounded in fact, pursued the claim and defense for delay and to needlessly increase litigation costs. *See* sec. 802.05(1)(a). The court ordered Isaacson to pay $1480 in costs and attorney's fees. Isaacson appeals.

## I. FEES AWARDED IN THE TRIAL COURT

The trial court awarded costs and fees pursuant to both secs. 802.05 and 814.025, Stats. However, where both statutes apply, and to the extent that there are differences between the two, sec. 802.05 applies. Sec. 814.025(4). Accordingly, we turn first to the determination of frivolousness under sec. 802.05. Section 802.05(1)(a) provides that an attorney's signature on any paper filed in court:

> constitutes a certificate that the attorney . . . has read the pleading, motion or other paper; that to the best of the attorney's . . . knowledge, information and belief, formed *after reasonable inquiry*, the pleading, motion or other paper is well-grounded in fact and is warranted by existing law or a good faith argument for the extension, modification or reversal of existing law; and that the pleading, motion or other paper is not used for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation. [Emphasis added.]

Section 802.05(1)(a), Stats., was created by sec. 5, 1987 Wis. Act 256, bringing it into conformity with Fed. R. Civ. P. 11 (Rule 11). *See* Legislative Reference Bureau Analysis, 1987 S.B. 550. The language of the two is virtually identical. No Wisconsin case law yet exists on what constitutes "reasonable inquiry" within the meaning of the statute. Because the statute was patterned after Rule 11, however, those federal cases interpreting Rule 11 may serve as persuasive authority in our interpretation of sec. 802.05. *See Gygi v. Guest,* 117 Wis. 2d 464, 467, 344 N.W.2d 214, 216 (Ct. App. 1984).

Rule 11 and sec. 802.05(1)(a), Stats., virtually identical in language, are each composed of three prongs. First, the person who signs a pleading, motion or other paper certifies that the paper was not interposed for any improper purpose. Second, the signer warrants that to his or her best "knowledge, information and belief formed after reasonable inquiry" the paper is "well grounded in fact." Third, the signer also certifies that he or she has conducted a reasonable inquiry and that the paper is warranted by existing law or a good faith argument for a change in it. *See Beeman v. Fiester,* 852 F.2d 206, 208-09 (7th Cir. 1988). If any one of these three prongs has been violated, sanctions must be imposed. *See id.* at 209.

Our standard of review is a deferential one.[1] *Mars Steel Corp. v. Continental Bank N.A.,* 880 F.2d 928, 933 (7th Cir. 1989). Determining what and how much pre-filing investigation was done is a question of fact. *See id.* We are bound by those findings unless they are clearly erroneous. Sec. 805.17(2), Stats. Determining how much investigation *should* have been done, however, is a matter within the trial court's discretion because the amount of research necessary to constitute "reasonable inquiry" may vary, depending on such things as the particular issue involved and the stakes of the case. *Mars Steel,* 880 F.2d at 932-33. We will sustain a discretionary act if the trial court examined the relevant facts, applied a proper standard of law and, using a demonstrated rational process, reached a conclusion that a reasonable judge could

---

[1]For a thorough discussion of the evolution of and rationale behind the deferential standard of review in Rule 11-type cases, see *Mars Steel Corp. v. Continental Bank N.A.,* 880 F.2d 928, 932-37 (7th Cir. 1989).

reach. *Appleton Post-Crescent v. Janssen,* 149 Wis. 2d 294, 302–03, 441 N.W.2d 255, 258 (Ct. App. 1989).

## A. Factual Findings

The trial court made twenty findings of fact relative to the defense of Rolando and to the claim that the Rileys' suit was frivolous. A few examples serve to illustrate the basis for the trial court's determination that Isaacson's conduct was sanctionable:

(1) Based solely on the client interview, Isaacson asserted a claim that the Rileys' complaint was frivolous.

(2) Isaacson did not independently investigate the number of vehicles previously owned by Rolando, who stated he had never been in the business of selling used cars.

(3) Rolando gave Isaacson varying accounts of the type of sales business he was in.

(4) Answers to interrogatories and responses to document demands were made tardily and only in response to the September 7, 1988 hearing on the motion to compel responses.

(5) Isaacson knew prior to September 7, 1988 that telephone service for Rolando's employer and DeMott was disconnected.

(6) Isaacson exhibited lack of adequate knowledge of the allegations of the complaint, stating he thought Rolando had purchased the Zephyr from the Andersons. Despite this, Isaacson later failed to attend or participate in the Andersons' depositions.

(7) Even after learning of the existence of DOT records contradicting the information Rolando had

given him, Isaacson neglected to investigate the facts of the complaint.

(8) Isaacson knew or reasonably should have known that the answers he prepared to the interrogatories and document demands on September 26, 1988 were false, evasive and incomplete and, as of that date, Isaacson knew or reasonably should have known he was continuing a defense and a claim of frivolousness without basis in law or equity.

(9) The claim of frivolousness against the Rileys and their attorney was interposed to harass and intimidate, was not made in good faith and was made without adequate investigation or reasonable inquiry into the facts.

██

The record is replete with support for these findings, and Isaacson does not contest them. In fact, he testified that he engaged in no investigation but instead relied solely on Rolando's account. We hold that the trial court's findings of fact are not clearly erroneous.

## B. "Reasonable Inquiry"

We turn now to the second facet of our review—determining whether the trial court abused its discretion in concluding that Isaacson's actions failed to meet the legal standard of reasonable inquiry.

Isaacson argues that his position was reasonable because he acted in reliance upon his client's representation of the facts. Isaacson further points out that even the trial judge commented that Rolando had "duped" Isaacson as well as the Rileys, and that the answer at first may not have been frivolous.

We note at the outset that Isaacson substantially overreads the court's isolated remark. The comment

merely reflects the court's recognition that an attorney's instinct is to believe his or her client and that not all clients may possess the highest standards of integrity. That, in our view, is all the more reason for an attorney independently to examine the "facts."

██

Furthermore, sec. 802.05, Stats., does not recognize a "good faith" defense for setting forth an unmeritorious claim. A paper filed in the best of faith, even when the lawyer is convinced of the justice of the client's cause, is sanctionable if counsel neglected to make reasonable inquiry beforehand. *See Mars Steel,* 880 F.2d at 932. How much investigation is reasonable depends on the circumstances: sanctions are not awarded just because things went poorly, if the pre-filing investigation was otherwise adequate in light of what was known in the time available. *Id.*

Isaacson himself concedes he did not undertake an independent investigation of the facts as presented by Rolando or of the allegations of the complaint. He also concedes he did not attempt to verify or explore the allegations by conducting any research, contacting DOT or even telephoning the Rileys' attorney. Isaacson admits he proceeded entirely on Rolando's sometimes inconsistent word.

Simple reliance upon one's client is not sufficient. "An empty head but a pure heart is no defense. [Rule 11] requires counsel to read and consider before litigating." *Mars Steel,* 880 F.2d at 932. Likewise, sec. 802.05, Stats., also bars a defense of good faith. It instead creates obligations to one's adversaries and to the legal system to avoid needless cost, delay and waste of judicial resources. In particular, it mandates an affirmative duty of reasonable inquiry before proceeding with a claim or filing any paper. Isaacson did not perform even the most rudimen-

tary check on his client's statements before asserting the frivolousness claim against the Rileys. Moreover, despite misgivings and contradictory information, he continued Rolando's defense.

■

After considering the relevant facts before it and applying the proper law, the trial court reasonably and rationally concluded that Isaacson's frivolousness claim against the Rileys and his defense of Rolando after September 7, 1988 were commenced or continued without his having first made a reasonable inquiry to determine whether they were well-grounded in fact. The court also concluded that Isaacson proceeded in bad faith by asserting positions without reasonable bases in law or equity and which could not be supported by a good faith argument for a change in existing law. It was not an abuse of discretion for the trial court to determine that Isaacson neglected the investigative duties mandated by sec. 802.05, Stats.

Having affirmed on the basis of sec. 802.05, Stats., we need not reach the issue of whether Isaacson's claim and defense were frivolous within the meaning of sec. 814.025, Stats. *See* sec. 814.025(4).

## II. COSTS AND FEES ON APPEAL

The Rileys ask that we not only affirm the award of attorney's fees and costs made below, but that we also award the costs and fees they incurred in defending, through this appeal, that earlier award. Since their appellate costs and fees likely will exceed the $1480 award being appealed, they argue that forcing them to shoulder their own appellate costs would absurdly result in their being worse off than had they not defended at

all. They contend that such an award is proper under either sec. 802.05, Stats., or Rule 809.25(3), Stats.

Isaacson, by contrast, argues that Rule 809.25(3), Stats., alone governs appellate fees and costs in this case. That statute mandates that the appeal itself be found frivolous before costs, fees and attorney's fees can be awarded. Rule 809.25(3)(a), (c), *as amended by* Supreme Court Order, 151 Wis. 2d xviii (1989). Contending that nothing in the record warrants a determination that he maintained a frivolous appeal within the meaning of that statute, Isaacson asserts that appellate fees are improper. We disagree.

### A. Appellate Fees Pursuant to Sec. 802.05, Stats.

We hold that reasonable attorney's fees are warranted under sec. 802.05, Stats. Our legislature has expressed its intent that sec. 802.05 track federal Rule 11; we are therefore convinced that we should follow the interpretation given this aspect of Rule 11 in federal case law. *See Gygi,* 117 Wis. 2d at 467, 344 N.W.2d at 216.

Rule 11 is a fee-shifting statute, *Hays v. Sony Corp.,* 847 F.2d 412, 419 (7th Cir. 1988), although not in the traditional sense in which "the loser pays." *Mars Steel,* 880 F.2d at 932. It is a widely recognized feature of fee-shifting statutes in general that, if a party prevails below and is entitled there to a reasonable attorney's fee, the entitlement extends to the fee reasonably incurred in defending the award on appeal. *See, e.g., Bond v. Stanton,* 630 F.2d 1231, 1234 (7th Cir. 1980), *cert. denied sub nom. Blinzinger v. Bond,* 454 U.S. 1063 (1981) (appellate attorney's fees in 42 U.S.C. sec. 1988 case). "There is no reason to complicate this body of law by making an exception for Rule 11 fee-shifting." *Hays,* 847 F.2d at 419.

The success of a Rule 11-type statute depends in large part upon the award of sanctions on appeal:

> If the wronged party must bear its own legal costs on appeal in order to defend its award, it may end up substantially in the hole, may end up, indeed, worse off because of Rule 11 . . .. Pyrrhic victories are the stuff of history but hardly balm for legal wounds. It would be unfortunate if aggrieved parties abandoned defense of their awards in order to hold down their own legal costs; as we have emphasized, enforcement of Rule 11 is important to the functioning of the legal system and the protection of the rights of parties in other cases. Those to whom sanctions have been awarded should be induced to defend their awards, without additional costs to themselves.

*Mars Steel*, 880 F.2d at 939. Moreover, the very purpose behind Rule 11—and, likewise, sec. 802.05, Stats.—demands this application. The intent is to provide a "make-whole" remedy to place the prevailing party in the position it would have been in had the frivolous argument not been advanced in the trial court. *Borowski v. DePuy, Inc.,* 876 F.2d 1339, 1342 (7th Cir. 1989).

■

Accordingly, we hold that upon an appeal from a ruling of frivolousness, the reviewing court need not determine whether the appeal itself is frivolous before it can award appellate costs and reasonable attorney's fees. Rather, if the claim was correctly adjudged to be frivolous in the trial court, it is frivolous *per se* on appeal. *Gorenstein Enterprises, Inc. v. Quality Care-USA, Inc.,* 874 F.2d 431, 438 (7th Cir. 1989).

■

This allocation of appellate costs is not inconsistent with "the American rule" Wisconsin recognizes in

262

awarding attorney's fees. Under the American rule, each litigant, prevailing or not, assumes his own costs in pursuing or defending a claim. *See Watkins v. LIRC,* 117 Wis. 2d 753, 758, 345 N.W.2d 482, 485 (1984). Harmonizing sec. 802.05, Stats., with the Rule 11 treatment of appellate costs and fees ensures that each side really does bear the expenses of its own case—*i.e.,* that the proponent of a position incurs the costs of investigating the facts and the law. *See Mars Steel,* 880 F.2d at 932.

We conclude that the allocation of appellate costs under Rule 11 accurately reflects the treatment of sec. 802.05, Stats., envisioned by our legislature. *See* Legislative Reference Bureau Analysis, 1987 S.B. 550 ("The sanction for violating this signing requirement is revised in the bill to conform with the changes in the federal rules"). Consequently, we hold that a party prevailing in the defense of an award of fees under sec. 802.05 is also entitled to a further award on appeal without a finding that the appeal itself is frivolous under Rule 809.25(3), Stats.

B. Appellate Fees Pursuant to Rule 809.25(3)(a), (c), Stats.

We also conclude that Isaacson's appeal is frivolous under Rule 809.25(3)(c)2, Stats. An experienced attorney, Isaacson at least should have known that his unfounded claim of frivolousness against the Rileys and their attorney, and his uninvestigated defense of Rolando after September 7, 1988 were without any reasonable basis in law or equity and were unsupportable by a good faith argument for a change in existing law. Therefore, his appeal of the trial court's determination that those actions were frivolous is also frivolous.

As a final matter, members of the Wisconsin bar should be aware that in some jurisdictions a violation of the reasonable inquiry requirement of statutes such as sec. 802.05, Stats., would constitute "legal malpractice." *See Hays,* 847 F.2d at 418. While that issue is not before us here, we do urge familiarity with the statute's dictates and point out that statutory compliance should not hobble a competent attorney's vigorous advocacy. On the contrary, it should encourage aggressive and creative championship of claims which reasonable investigation shows to be plausibly grounded in law and fact.

We affirm the trial court's frivolousness determination. We also determine Isaacson's appeal to be frivolous. We remand for the trial court to determine and award the Rileys their appellate attorney's fees.

*By the Court.*—Judgment affirmed but cause remanded.