Elmer W. Glaeske, as Trustee of the Irrevocable Trust of Arthur Shaw, Plaintiff-Respondent,
v.
Elwyn M. Shaw, Defendant-Appellant,
William Shaw, Defendant-Respondent,
Frank P. Murphy, Co-Appellant.
No. 03-2568.
Court of Appeals of Wisconsin.
Opinion Filed: January 6, 2005.
Before Vergeront, Lundsten and Higginbotham, JJ.
¶1 LUNDSTEN, J.
Attorney Frank Murphy appeals a judgment in which the circuit court assessed attorneys' fees against him in connection with his representation of Elwyn Shaw. Elwyn challenged a trust created by his father, Arthur Shaw. Elwyn claimed that William Shaw, Arthur's nephew and the beneficiary of the trust, exercised undue influence over Arthur. The circuit court concluded that Elwyn's undue influence claim, though not frivolous at the outset, became frivolous in the course of the litigation. We agree with the circuit court and uphold its sanctions award. We also conclude that William and the trustee, Elmer Glaeske, are entitled to their attorneys' fees for this appeal. We therefore affirm and remand for the circuit court to determine costs and fees attributable to this appeal.

Background
¶2 Arthur died leaving a trust naming William as the beneficiary. Following Arthur's death, Elwyn retained counsel to challenge the validity of the trust and filed a "Motion to Freeze" the distribution of assets in Florida, where Arthur resided at the time of his death. In the motion, Elwyn alleged that William unduly influenced Arthur and that the trust did not comply with the execution requirements under Florida law.
¶3 In response, the trustee, Elmer Glaeske, filed this declaratory judgment action in Wisconsin, naming Elwyn and William as defendants. In Elwyn's answer, he raised undue influence as an affirmative defense. Elwyn also filed a motion to invalidate the trust, alleging that, because the trust was not properly executed, the purported trust assets actually belonged to Arthur's Florida probate estate. The circuit court denied Elwyn's motion to invalidate the trust.
¶4 Glaeske and William successfully moved for summary judgment, arguing that Elwyn had failed to establish his claim of undue influence. Glaeske and William then moved for sanctions against Elwyn and his counsel on two grounds: (1) the alleged frivolousness of Elwyn's undue influence claim, and (2) Elwyn's failure to comply with a scheduling order regarding the disclosure of expert witnesses.
¶5 The circuit court held a hearing on sanctions. However, before the court could make a final sanctions ruling, Elwyn appealed. He asserted error on a number of grounds, including the court's denial of his motion to invalidate the trust for improper execution. In Glaeske v. Shaw, 2003 WI App 71, 261 Wis. 2d 549, 661 N.W.2d 420, review dismissed, 2003 WI 32, 260 Wis. 2d 756, 661 N.W.2d 103 (No. 01-3056), we affirmed the circuit court, resolving all issues against Elwyn. At the same time, we denied Glaeske's and William's motions under WIS. STAT. RULE 809.25(3) (2001-02)[1] requesting attorneys' fees for a frivolous appeal, stating that "we cannot conclude that [Elwyn's] argument concerning the validity of the trust execution lacked any basis in law or equity." Glaeske, 261 Wis. 2d 549, ¶50. We remanded for further proceedings on the issue of sanctions.
¶6 On remand, the circuit court determined that Elwyn's undue influence claim was not frivolous at the outset, but became frivolous after the depositions of various witnesses, including, in particular, Arthur's former live-in companion, Bessie Bradshaw. From that point forward, the court determined, there remained no reasonable factual basis for Elwyn's claim that William exerted undue influence over Arthur. The court awarded as a sanction $25,880 in attorneys' fees incurred by both Glaeske and William, considering only those fees incurred after Bradshaw's deposition. The court apportioned the award onequarter joint and several among Elwyn, Elwyn's local counsel, and Attorney Murphy, who was Elwyn's Florida-based counsel; one-half joint and several between Elwyn and Murphy; and one-quarter solely to Elwyn. Murphy appeals.[2]

Discussion

Frivolousness of Elwyn's Undue Influence Claim
¶7 This case implicates the imposition of sanctions pursuant to WIS. STAT. §§ 802.05(1)(a) and 814.025. Under § 802.05(1)(a), a person signing a pleading, motion, or other paper makes three warranties:
First, the person who signs a pleading, motion or other paper certifies that the paper was not interposed for any improper purpose. Second, the signer warrants that to his or her best knowledge, information and belief formed after reasonable inquiry the paper is well grounded in fact. Third, the signer also certifies that he or she has conducted a reasonable inquiry and that the paper is warranted by existing law or a good faith argument for a change in it.
Wisconsin Chiropractic Ass'n v. Chiropractic Examining Bd., 2004 WI App 30, ¶13, 269 Wis. 2d 837, 676 N.W.2d 580 (citations omitted). Section 814.025(3)(a), in some respects, parallels the first § 802.05(1)(a) warranty. Wisconsin Chiropractic Ass'n, 269 Wis. 2d 837, ¶19. Section 814.025(3)(b) is similar to the second and third § 802.05(1)(a) warranties. Wisconsin Chiropractic Ass'n, 269 Wis. 2d 837, ¶17.
¶8 The circuit court's decision here corresponds to WIS. STAT. § 814.025(3)(b) and the second warranty, namely, that the signer warrants to the best of his or her knowledge, information, and belief, formed after reasonable inquiry, that a paper is well grounded in fact. In its oral decision, the court concluded that, although Elwyn's claim of undue influence was not frivolous at the outset, it became frivolous in the course of the litigation. Specifically, the court stated:
After the deposition of various witnesses in the State of Florida, and in particular, the deposition of Be[ssie] Bradshaw on April 26, 2001, there remained no reasonable factual basis for the continuation of the assertion that undue influence had been asserted by William Shaw.
... From that point forward, Attorney Murphy, Attorney May [Elwyn's local counsel], and Elwyn Shaw knew or should have known that there was no reasonable basis to proceed as they did.[3]
¶9 We agree with the circuit court's conclusion that a reasonable attorney in Murphy's position would have known after the Bradshaw deposition that the continued prosecution of Elwyn's undue influence claim was frivolous because it was obvious at that point in time that the claim lacked a reasonable basis in fact. Because Murphy submitted a number of papers to the circuit court with his signature pursuing the undue influence claim after the Bradshaw deposition, including a brief and affidavit opposing summary judgment and advancing Elwyn's claim, the circuit court correctly determined that this additional litigation was frivolous.
¶10 There are two undue influence tests: a two-element test and a fourelement test. Hoeft v. Friedli, 164 Wis. 2d 178, 184-85, 473 N.W.2d 604 (Ct. App. 1991). The two-element test requires: (1) a confidential or a fiduciary relationship between the decedent and the favored beneficiary, and (2) suspicious circumstances surrounding the making of the estate document. See id. at 184. The four-element test requires: (1) susceptibility to undue influence, (2) opportunity to influence, (3) disposition to influence, and (4) coveted result. Id. at 185. Regardless which is applied here, pursuit of the undue influence claim after the Bradshaw deposition was frivolous.
¶11 We affirm a circuit court's findings of fact under WIS. STAT. §§ 802.05 and 814.025 unless they are clearly erroneous, but whether the facts as found ultimately fulfill the statutory standards of frivolousness presents a question of law that we review de novo. Wisconsin Chiropractic Ass'n, 269 Wis. 2d 837, ¶20. We apply an objective test to the undisputed facts relating to Murphy's conduct. The question here is whether a reasonable attorney in Murphy's position would have known, after the Bradshaw deposition, that the available evidentiary facts did not provide "any reasonable basis" to meet Elwyn's burden of proof. See Jandrt v. Jerome Foods, Inc., 227 Wis. 2d 531, 549-50, 597 N.W.2d 744 (1999); Stern v. Thompson & Coates, Ltd., 185 Wis. 2d 220, 245, 517 N.W.2d 658 (1994).
¶12 The quantum of proof necessary to constitute "any reasonable basis" varies with the burden of proof that the law imposes. Stern, 185 Wis. 2d at 245. Thus, a greater quantum of proof is necessary to create a reasonable basis for a claim that must be proved by clear, satisfactory, and convincing evidence than is necessary to create a reasonable basis for a claim that must be proved by a preponderance of the evidence. Id. Here, Elwyn's undue influence claim required proof meeting the clear, satisfactory, and convincing standard. Freitag v. Solverson, 9 Wis. 2d 315, 317, 101 N.W.2d 108 (1960) (four-element test); Wickert v. Burggraf, 214 Wis. 2d 426, 429, 570 N.W.2d 889 (Ct. App. 1997) (two-element test). It follows that the factual basis for Elwyn's undue influence claim needed to be stronger than if Elwyn had been pursuing an ordinary civil claim requiring proof by a preponderance of the evidence.
¶13 Murphy fails to explain whether he meant to pursue the undue influence claim under the two-element test, the four-element test, or both. Regardless, there was no factual basis for the claim.
¶14 Perhaps relying on the four-element test, Murphy argues that Elwyn's undue influence claim was not frivolous because Bradshaw, an independent witness close to Arthur, testified that William "intimidated" Arthur into getting the estate and that William "knew what he was doing" by giving Arthur attention. Murphy also points to Bradshaw's testimony that Bradshaw thought Arthur's judgment was slipping. However, Bradshaw's entire deposition reveals that these are unsupported opinions that would not be admissible at trial. Indeed, Bradshaw gave no testimony about any observations on her part supporting a finding that William intimidated Arthur.[4]
¶15 Other than Bradshaw's conclusory opinions, Murphy points to no evidence supporting the assertion that Arthur was susceptible to influence or that William intimidated Arthur. The lack of value of Bradshaw's unsupported opinion testimony should have been apparent to a reasonable attorney in light of the overwhelming contrary evidence, which we summarized in our previous decision in this matter:
The record contains ample evidence tending to show that Arthur was mentally agile and strong-willed until his death. For example, the trustee, Arthur's accountant of twenty years, testified at deposition that Arthur made "sound decisions" and was "very independent" concerning his finances until his death. Arthur's estate planner of twelve years described Arthur as a man who "knew what he wanted" and who was "quite forceful in saying this is what I want and this is what I want you to give to me." Arthur's long-time neighbors testified that Arthur was "[s]harp as a tack" and that they never noticed any decline in his mental acuity. Finally, Elwyn admitted at deposition that his father was "strong willed" and that his "stubbornness became much more pronounced toward the end of his life."
Elwyn attempts to counter this evidence by arguing that Arthur was mentally impaired and that his numerous trust revisions demonstrate a vacillating character. Neither claim finds support in the record. Elwyn submitted no expert medical testimony in support of his allegation of Arthur's mental impairment, and the lay witness testimony uniformly indicates that Arthur was of sound and independent mind until his death. Further, although Arthur revised his estate plan several times in the decade before his death, he had designated William as his primary beneficiary in documents that were in effect for at least several years before his death, thereby undermining Elwyn's allegation that Arthur was of a vacillating character, or that the final trust in William's favor was an impulsive or irrational act on Arthur's part.
Glaeske I, 261 Wis. 2d 549, ¶¶29-30.
¶16 With respect to the two-element test, we observe that the record is devoid of evidence that William had a confidential or fiduciary relationship with Arthur, one of the two necessary elements under that test. See id., ¶¶32-33. Accordingly, by the time of Bradshaw's deposition, if not before, Elwyn's undue influence claim also lacked a reasonable basis in fact under the two-element test.
¶17 In sum, the circuit court correctly determined that Elwyn's undue influence claim became frivolous after Bradshaw's deposition because it would have been apparent to a reasonable attorney that the claim lacked any reasonable basis in fact. Murphy raises no meritorious argument to the contrary. Rather, he merely repeats his general assertion that Bradshaw's unsupported conclusory opinions were sufficient.[5]

Murphy's Other Arguments Regarding the Fee Award

Amount of Fee Award
¶18 Murphy makes a number of arguments with regard to the amount of the fee award. Although many of his arguments are disorganized, underdeveloped, difficult to discern, and unsupported by citation to authority, we attempt to address them. As a general rule, we sustain a circuit court's determination as to the amount and reasonableness of fees unless the court's determination is clearly erroneous. See Jandrt, 227 Wis. 2d at 575.
¶19 Murphy first argues that the fees awarded were excessive because the circuit court assumed that Glaeske and William were "entitled" to fees after the Bradshaw deposition, whereas the court should have determined whether particular fees were "caused" by Elwyn's undue influence claim under a "but-for" test as set forth in Jandrt. Murphy, however, mischaracterizes the circuit court's decision. We conclude that Murphy's but-for argument has no merit.
¶20 The supreme court in Jandrt discussed the "but-for" test as follows:
Logic dictates that "reasonable" sanctions would make a party whole by including in sanctions all the costs and fees associated with defending against a frivolous action. While a court may not be obligated to do so, use of a "but-for" standard for sanctions may be sensible. Such a standard shifts to the violator the economic burden of all fees and expenses reasonably generated in response to the frivolous argument or pleading. Under such a "but-for" approach, the circuit court should make findings as to what fees and expenses were reasonably generated.
Further, in determining the appropriate amount of fees and expenses, a court should "reflect upon equitable considerations in determining the amount of the sanction."
Id. at 577 (citations omitted). We note that the "but-for" test actually works against Murphy because the only issue driving the litigation in the circuit court by the time of Bradshaw's deposition was Elwyn's undue influence claim. The other issues that Elwyn was litigating had dropped out of the case when the circuit court denied his motion to invalidate the trust. Thus, under the but-for test, all of the attorneys' fees for litigation in the circuit court that were reasonably incurred by Glaeske and William after Bradshaw's deposition could have been included in the award.
¶21 At any rate, the circuit court's analysis comports with Jandrt. The circuit court said:
In imposing sanctions, I have taken into consideration fees incurred by the plaintiff and defendant William Shaw after April 26, 2001.
I note that there was litigation regarding this gentleman's estate in two forums, Wisconsin and Florida. I've attempted to avoid consideration of fees which related to the Florida litigation. I note also that no part of the fees on appeal are at issue in this decision and they are not in any way considered.
I have four different attorneys that have made claims for fees, Attorney Curran, Attorney Varda, Attorney Hume and Attorney Carlson. I agree with Attorney Murphy that there were certainly enough attorneys involved in this case. However, each party was entitled to be represented in this matter. And with the exception of Attorney Carlson, who acted as co-counsel with Attorney Varda, there was no duplication of representation.
In addition, as noted, there was litigation in two forums, and Attorney Hume assumed some responsibility in Florida for the deposition of witnesses in that state. And under the circumstances, Ithe number of attorneys was not unusual or unnecessary.
Later in its decision, the court explained that it was awarding only one-half of the fees requested for Attorney Hume because of the litigation conducted in two venues and that it was awarding no fees associated with Attorney Carlson. The court also said: "It appears that the hourly rates of the various attorneys are fair and reasonable. As I said, I have reviewed all of the billing entries for the period subsequent to the deposition of Ms. Bradshaw on April 26, 2001. And those services, and all of those services, appear to be reasonable and necessary."
¶22 Murphy makes a number of other undeveloped arguments. These arguments all seem to center around Murphy's belief that the circuit court incorrectly included fees or erred in determining that the fees requested were reasonable. He asserts, for example, that the circuit court's "saying that no appellate fees are included does not make it so." Yet, Murphy completely fails to demonstrate, with record cites or calculations, why he believes the circuit court included appellate fees. We will not develop Murphy's arguments for him or further address his unsupported arguments as to why he believes the circuit court's award was excessive. See County of Dodge v. Michael J.K., 209 Wis. 2d 499, 506 n.3, 564 N.W.2d 350 (Ct. App. 1997).

Glaeske as Interested Party
¶23 Murphy argues that Glaeske was not entitled to fees, asserting that only William and not Glaeske was an interested party with regard to the undue influence claim. This argument has no merit.
¶24 As trustee, Glaeske had a fiduciary responsibility to see that the terms of Arthur's trust, which named William as the beneficiary, were fulfilled. Van Epps v. City Bank of Portage, 40 Wis. 2d 139, 148-49, 161 N.W.2d 278 (1968). Glaeske acted pursuant to that duty by filing a Wisconsin declaratory judgment action in response to the threat that the Florida litigation posed to the trust assets and to William's interest in those assets as the beneficiary. Consequently, it was plainly appropriate for the circuit court to consider attorney's fees for Glaeske in the sanctions award.

Murphy's Motion to Withdraw
¶25 Murphy argues that it was unfair or inappropriate to award fees against him because he moved to withdraw as Elwyn's counsel and Glaeske objected to the withdrawal. Murphy posits: "What should an attorney do if a case is not initially frivolous, but becomes frivolous? One course of action is for the attorney to withdraw." He contends that Glaeske's objection waived Glaeske's entire claim for fees.
¶26 We fail to discern any arguable reason why Glaeske's objection to withdrawal waives fees incurred prior to the time Murphy moved to withdraw. Certainly Murphy provides none. To the extent that Murphy may be arguing that an award of fees assessed against him should exclude fees incurred after the time he moved to withdraw, his argument is undeveloped. Our review of the record indicates that relatively little occurred between the time Murphy moved to withdraw and the time Murphy's motion was granted. Apart from his sweeping waiver argument, Murphy provides no specific argument targeted at attorney's fees assessed against him that are attributable to this limited time period. The bottom line is that Murphy has failed to provide any reasoned argument as to why Glaeske's objection constitutes waiver of any right to fees.

Due Process
¶27 Murphy argues that the circuit court's failure to hold a full evidentiary hearing on fees upon remand from the previous appeal was a violation of due process. He relies on Radlein v. Industrial Fire & Casualty Insurance Co., 117 Wis. 2d 605, 345 N.W.2d 874 (1984), in which the supreme court affirmed a fee award made by the circuit court without an additional hearing after remand but noted that "[n]ormally, this court would require a special and separate hearing before the trial court on the issue of frivolousness." Id. at 629. The Radlein court did not, however, hold that due process requires such a hearing, and Murphy completely fails to support his bald assertion that the absence of a hearing on remand violated due process in this case.
¶28 In any event, this case is different from Radlein. Here, an on-therecord transcribed sanctions hearing was held prior to remand. An additional hearing was held, after remand, with Murphy appearing by telephone. The circuit court informed the parties it was relying on prior briefing and arguments. There is no indication that the circuit court limited Murphy's presentation at either hearing. At the last hearing, the court asked Murphy: "Mr. Murphy, anything further for the record?" and Murphy answered, "No."
¶29 Moreover, Murphy does not point to any place in the record where he requested a more extensive hearing, and he does not demonstrate that he was in any way prejudiced by the absence of a more extensive hearing. Murphy does not point to any argument he was unable to make; he simply says he was denied the opportunity to make arguments. Murphy does not point to any legal fee that was improperly imposed due to the absence of a hearing; he asserts only, without explanation, that our prior opinion "substantially altered the circumstances for a fee award."
¶30 Murphy's due process argument has no merit.

Offset for Allegedly Frivolous Nature of Glaeske's and William's Fee Requests
¶31 Murphy also argues that Glaeske's and William's requests for fees dating back to the commencement of litigation were frivolous because this court determined in the previous appeal that Elwyn's argument concerning the validity of the trust execution was not frivolous. Therefore, Murphy argues, he is entitled to an offset in sanctions for Glaeske's and William's frivolous requests that all fees be awarded from the inception of the action. Murphy's argument, intentionally or not, ignores the fact that on remand Glaeske and Murphy properly raised an argument supporting an award of attorney's fees that dated back to the commencement of the action and that we did not address in our prior opinion.
¶32 Glaeske's and William's motions requesting fees from the commencement of this action were based in part on their assertion that Elwyn's undue influence claim was, from the outset, asserted for a malicious or other improper purpose under WIS. STAT. § 802.05(1)(a) or WIS. STAT. § 814.025(3)(a). This is an argument we did not address in our previous decision. If adopted by the circuit court, this argument would have provided an independent ground, not precluded by our prior decisions, on which to award fees from the commencement of the action.
¶33 Since Murphy's argument for offset ignores Glaeske's and William's malicious or other improper purpose argument, he has obviously failed to show that their argument is frivolous. Nonetheless, we observe that the record contains evidence supporting the assertion that Elwyn pursued his undue influence claim from the outset for an improper purpose. William averred that Elwyn suggested to William, before the Wisconsin litigation commenced, that Elwyn would dedicate unlimited amounts of time and effort to litigation in an attempt to exhaust Arthur's estate rather than allow William to have it.
¶34 In sum, Glaeske's and William's motions requesting fees from the commencement of this action were not frivolous. The same cannot be said of Murphy's argument for an offset.

Murphy's Status as Out-of-State Counsel
¶35 Murphy argues that, as out-of-state counsel, he should not have borne the responsibility of any of the sanctions. He argues that Elwyn's local counsel should have borne all of them. Murphy, however, cites no authority in support of this argument and provides no reasoned argument. If Murphy's argument prevailed, it would untenably permit non-Wisconsin attorneys litigating pro hac vice in Wisconsin courts to maintain frivolous claims without any personal accountability.
¶36 And, there is certainly no reason why Murphy should not be held accountable here. The record shows that Murphy was lead counsel for Elwyn in the Wisconsin litigation. The circuit court correctly found that local counsel "was less directly in control of this litigation." The circuit court correctly recognized that both attorneys should shoulder responsibility for sanctions, and the court properly attributed greater responsibility to Murphy, given his lead role in the case.

Joint and Several Structure of the Fee Award
¶37 Murphy argues that the circuit court erred in making liability for the sanctions award partly joint and several. His complete argument on this topic is as follows:

Summary: A fee award like this should not be joint and several.
In the case at bar, the Trial Judge apparently recognized this. That is, by not making the entire award 100% joint and several, apparently the court recognized case law to that effect. But simply making a small portion of the award (25%) non joint is not a valid way of avoiding the rule against joint and several. State v. State Farm Fire & Cas. Co. Wis., 100 Wis. 2d [582], 302 N.W.2d 827, 839 (Wis. 1981).
The appellate court should not however allow the non-joint and several rule [to] be violated by the evasion of making a small portion non-joint and several.
We reject Murphy's argument as undeveloped.
¶38 Murphy's reference to State v. State Farm Fire & Casualty Co., 100 Wis. 2d 582, 302 N.W.2d 827 (1981), indirectly informs this court that Murphy believes an award of attorney fees for a frivolous action under WIS. STAT. § 814.025 may not impose joint and several liability on a party and that party's attorney. See State Farm, 100 Wis. 2d at 605 (section 814.025 "does not allow the court to impose joint and several liability"). However, Murphy fails to acknowledge that he was sanctioned under both § 814.025 and WIS. STAT. § 802.05(1)(a). Thus, Murphy does not explain why the circuit court could not rely on § 802.05 to impose joint and several liability. We decline to develop and then resolve this issue. See MCI, Inc. v. Elbin, 146 Wis. 2d 239, 244-45, 430 N.W.2d 366 (Ct. App. 1988) (courts need not consider undeveloped arguments).
¶39 We choose, however, to briefly explain why Murphy's omission is significant. WISCONSIN STAT. § 814.025(4) specifies that "[t]o the extent s. 802.05 is applicable and differs from this section, s. 802.05 applies." This language might be construed to mean that the authority of the circuit court to structure a fee award under WIS. STAT. § 802.05 trumps any conflict in the statutes that would otherwise arise when fees are awarded under both statutes. Cf. Wisconsin Chiropractic Ass'n, 269 Wis. 2d 837, ¶22 ("The legislature intended WIS. STAT. §§ 802.05 and 814.025 to work together to deter the filing of frivolous claims."). If a court construed § 814.025's cross-reference to § 802.05 in this manner, the question would arise whether a circuit court has authority to make joint and several awards under § 802.05. A significant but non-exhaustive effort by this court failed to locate a Wisconsin decision on point. However, § 802.05 is patterned after Rule 11 of the Federal Rules of Civil Procedure, and at least one federal case concludes that Rule 11 permits joint and several awards. See Jimenez v. Madison Area Technical Coll., 321 F.3d 652, 656 (7th Cir. 2003).
¶40 Murphy, obviously, knew when he drafted his appellate brief that sanctions were imposed against him both under WIS. STAT. §§ 814.025 and 802.05. Thus, his failure to address § 802.05 renders his argument on this topic frivolous because, even if he is right with respect to § 814.025, he cannot prevail without also demonstrating that the award is not authorized by § 802.05. Moreover, Murphy was present in person at a hearing when the attorney for Glaeske argued that State Farm is not dispositive on this topic precisely because it addresses only § 814.025 and not § 802.05. Accordingly, we conclude that Murphy's argument that the court erred in making liability joint and several is frivolous.

Attorneys' Fees for the Appeal
¶41 Glaeske and William move this court for their attorneys' fees and costs for this appeal under WIS. STAT. RULE 809.25(3), the frivolous appeal statute. An appeal is not frivolous within the meaning of this statute unless each argument in the appeal is frivolous. Manor Enters., Inc. v. Vivid, Inc., 228 Wis. 2d 382, 403, 596 N.W.2d 828 (Ct. App. 1999). Glaeske and William ask that we rely on the per se rule found in Riley v. Isaacson, 156 Wis. 2d 249, 456 N.W.2d 619 (Ct. App. 1990), to declare the entire appeal frivolous. They do not, however, explain why the Riley per se frivolous appeal rule applies to the challenges Murphy makes to aspects of the circuit court's decision that do not involve the determination of frivolousness itself. The part of Riley creating a per se frivolousness rule is not based on RULE 809.25(3)(a), but instead on WIS. STAT. § 802.05. Riley, 156 Wis. 2d at 261-63. That part of Riley did not address appellate issues apart from a challenge to the frivolousness determination itself. Accordingly, we rely on RULE 809.25(3)(a), and not on § 802.05 as interpreted in Riley.
¶42 We conclude that the WIS. STAT. RULE 809.25(3)(a) standard is met in this case and grant the motion. We remand for the circuit court to determine costs and fees attributable to this appeal. See Lucareli v. Vilas County, 2000 WI App 157, ¶¶8-13, 238 Wis. 2d 84, 616 N.W.2d 153 (discussing appropriate procedures for the determination of appellate costs and fees).
By the Court.  Judgment affirmed and cause remanded with directions.
NOTES
[1] All references to the Wisconsin Statutes are to the 2001-02 version unless otherwise noted.
[2] Elwyn filed a pro se notice of appeal. Shortly thereafter, Murphy also filed a notice of appeal, in which Murphy stated that the appeal was on behalf of Elwyn but that the appeal was from judgments "awarding attorney fees against Frank P. Murphy." We issued an order in which we noted that Murphy no longer represented Elwyn, and we construed Murphy's notice as commencing a co-appeal on his own behalf. After Elwyn missed his briefing deadline, we ordered him to file his brief no later than March 12, 2004, or be dismissed from the appeal. Elwyn did not file a brief.
[3] The circuit court also determined that, "at the very least, from and after the deposition of Bessie Bradshaw, the primary claim asserted by and on behalf of Elwyn Shaw was pursued for the purpose of maliciously injuring William Shaw and the trust estate created by Arthur Shaw." This part of the court's decision corresponds to the first warranty under WIS. STAT. § 802.05(1)(a) and to WIS. STAT. § 814.025(3)(a). We need not address this part of the court's decision because we affirm the court's sanctions award on the ground that, after the Bradshaw deposition, Elwyn's claim had no reasonable basis in fact. Either ground is sufficient by itself to establish frivolousness and to justify sanctions.
[4] In our independent review of the Bradshaw deposition, the only testimony we find that even arguably supports Bradshaw's conclusory assertion of intimidation is her testimony that William has a "nice soft way about him." This testimony, without more, hardly qualifies as evidence of intimidation. Thus, Bradshaw's unsupported opinion that William "intimidated" Arthur provides no meaningful basis for a fact finder to assess whether intimidation actually occurred. It follows that, without more, Bradshaw's opinion would be inadmissible because, by itself, it has no probative value. See WIS. STAT. §§ 904.01 and 904.02. Indeed, some of Bradshaw's opinion testimony even undercuts Elwyn's undue influence claim. Bradshaw gave testimony undercutting the proposition that William intimidated Arthur into cutting Elwyn out of Arthur's estate plan. Bradshaw testified that Arthur was very strong-willed, stubborn, and persistent. She said that Arthur held a grudge against Elwyn, had never forgiven Elwyn for past actions, and had been unkind to Elwyn in the past.
[5] We need not separately consider whether particular fees were imposed as a sanction for Elwyn's and Murphy's violation of the circuit court's scheduling order in submitting their expert witness list because the list was submitted after the Bradshaw deposition.