Lawrence G. WICKERT, Plaintiff-Respondent,

v.

John BURGGRAF and Robert A. Anderson Family Trust,
Defendants-Appellants.

Court of Appeals

*No. 96–1996. Submitted on briefs October 7, 1997.—Decided
October 28, 1997.*

(Also reported in 570 N.W.2d 889.)

427

On behalf of the defendants-appellants, the cause was submitted on the briefs of *Eric S. Darling* of *Schmidt, Darling & Erwin* of Milwaukee.

On behalf of the plaintiff-respondent, the cause was submitted on the brief of *John A. Fiorenza* and *Jeffrey M. Leggett* of *Fiorenza & Hayes, S.C.*, of Milwaukee.

Before Wedemeyer, P.J., Fine and Curley, JJ.

FINE, J. Lawrence G. Wickert commenced this tort action against V. John Burggraf and Beverly A. Anderson, claiming that Burggraf improperly influenced Virginia C. Burggraf, Wickert's grandmother, to revoke a will that left to Wickert property from Virginia Burggraf's estate. Wickert is the son of a deceased daughter of Virginia Burggraf. John Burggraf and Anderson are Virginia Burggraf's other two children.[1] The case was tried to a jury, which found for Wickert. The defendants appeal, claiming that there was insufficient evidence that John Burggraf had the requisite "confidential relationship" with Virginia Burggraf so as to entitle Wickert to an inference that John Burggraf exercised undue influence over her. The defendants also claim that the trial should have been before the court, not a jury. We affirm.

1. *Confidential relationship.*

---

[1] The Robert A. Anderson Trust, a trust established for the benefit of Beverly Anderson's husband, was substituted as a defendant in place of Beverly Anderson, who died after this action was commenced.

■ Wisconsin recognizes the tort of intentional interference with an expected inheritance. *See Harris v. Kritzik*, 166 Wis. 2d 689, 696–697, 480 N.W.2d 514, 517–518 (Ct. App. 1992); *see also Southern Cross, Inc. v. John*, 193 Wis. 2d 644, 646, 533 N.W.2d 188, 189 (1995) (*per curiam*, denying petition for review of unpublished court of appeals decision). The tort has five elements: (1) the plaintiff's expectancy; (2) intentional interference by the defendant with the plaintiff's expectancy; (3) tortious conduct by the defendant—for example, "fraud, defamation, bad faith, or undue influence"; (4) a "reasonable certainty" that but for the interference the testator would have left to the plaintiff a legacy; (5) damages. *Harris*, 166 Wis. 2d at 695, 480 N.W.2d at 517. The focus on this appeal is the third element: undue influence.

■ In this case, plaintiff sought to prove undue influence by employing the two-factor test, generally used in will-contest actions but applicable to intentional-interference-with-expected-inheritance tort actions as well: a "confidential relationship between the testator and the favored beneficiary," and "suspicious circumstances surrounding the making of the will." *Sensenbrenner v. Sensenbrenner*, 89 Wis. 2d 677, 686, 278 N.W.2d 887, 891 (1979).[2] Proof of these elements must be by the so-called middle burden of proof: "clear, satisfactory and convincing evidence." *Id.*, 89 Wis. 2d

---

[2] The four-factor test, not used here, requires a showing of susceptibility of the testator to undue influence, opportunity by the favored beneficiary to influence the testator, disposition by the favored beneficiary to influence the testator, and receipt of a coveted result. *Sensenbrenner v. Sensenbrenner*, 89 Wis. 2d 677, 686, 278 N.W.2d 887, 891 (1979).

at 685, 278 N.W.2d at 890. As noted, the defendants challenge the evidence in support of the "confidential relationship" element.

■

The relationship of parent and child does not, by itself, establish a "confidential relationship" as that term of art is used in the two-factor test for undue influence. *Id.*, 89 Wis. 2d at 688–690, 278 N.W.2d at 892–893. Evidence, however, that the child procured a person to draft the parent's will can establish that "confidential relationship," *id.*, 89 Wis. 2d at 690, 278 N.W.2d at 893, if there is "control or influence" over the drafting, *Hoffmann v. Wisconsin Valley Trust Co.*, 48 Wis. 2d 45, 51, 179 N.W.2d 846, 849 (1970).

■

Our review of a jury's verdict is limited. That verdict must be sustained on appeal if there is any credible evidence in the record to support the jury's finding, RULE 805.14(1), STATS.; *Fehring v. Republic Ins. Co.*, 118 Wis. 2d 299, 305–306, 347 N.W.2d 595, 598 (1984). Indeed, where, as here, the trial court approves the jury's verdict, that verdict comes to us doubly insulated from attack. *Fehring*, 118 Wis. 2d at 305, 347 N.W.2d at 598. As we recently noted:

> In reviewing a claim that a verdict is contrary to the evidence, a reviewing court is required to construe all evidence and inferences to be drawn from the evidence in favor of the jury verdict. If there is any credible evidence that will support the jury's verdict, the verdict must be affirmed. We must review a jury's verdict with great deference and indulge in every presumption in support of the verdict. This presumption is even more true when the verdict has the trial court's approval.

*Anderson v. Alfa-Laval Agri, Inc.*, 209 Wis. 2d 337, 352, 564 N.W.2d 788, 795 (Ct. App. 1997) (internal citations omitted). We review the evidence against this framework.

■ The following evidence supports the "confidential relationship" element. Attorney Joseph Welcenbach testified that John Burggraf told him that Virginia Burggraf wanted to have her will "redrawn." But it was more than that. According to Welcenbach, John Burggraf told him that he, John Burggraf, also a lawyer, was "going to rough up some forms or maybe give some thought" to the specifics of Virginia Burggraf's new testamentary documents:

> And I said: Fine, I will go there Monday, and either I could have the forms or he could have them, and if they were suitable, I'd go back, redo them, put on a fancy blue-back, put them in an envelope and that type of thing, and that would be that.

Several days later, on a late Saturday afternoon, John Burggraf called Welcenbach to say that "his mother wanted to sign or do her Will today." When Welcenbach protested that it was Saturday, John Burggraf told him that he, John Burggraf, would take care of it. Welcenbach told the jury:

> It's no big secret, lawyer's Wills are all on computers. Probably everybody [*sic*] is pretty much the same. You use a computer-type thing. So, he ran them off or said: I will run them off, and you can go through them with mom, or my mother; and if they're fine, okay. If not, you change them or whatever.

Later that Saturday afternoon, Welcenbach went to the nursing home where Virginia Burggraf was staying. John Burggraf and his wife were already there. "He introduced me to his mother. He had these papers along, the Will and the Trust; and I think the Deeds and what not. I said: I'd like to look through them. I went and looked through them." Welcenbach then spoke with Virginia Burggraf, who signed the documents that John Burggraf prepared without any changes. This evidence, taken in conjunction with Wickert's testimony that John Burggraf told him "I will make sure my mother never leaves you a dime," is sufficient, given the scope of our review, to support a jury determination that John Burggraf had a "confidential relationship" with his mother.[3]

## 2. *Jury trial.*

██

The defendants argue that the trial court erred in giving this case to a jury, rather than trying it as a bench trial. RULE 805.01(2), STATS., requires that a party seeking either a jury or bench trial "demand a trial in the mode to which entitled at or before the scheduling conference or pretrial conference, whichever is held first." Wickert demanded a jury trial timely. The defendants first sought on the morning of

---

[3] John Burggraf denied making this threat, but the jury could have credited Wickert's testimony. Additionally, although the defendants argue in their brief before this court that "the evidence is undisputed that Virginia Burggraf selected Joe Welcenbach to handle changes to her estate plan," the jury could have easily determined from Welcenbach's testimony that John Burggraf was the one who had selected him to, in Welcenbach's words, put a "fancy blue-back" on documents that John Burggraf actually prepared.

trial to have the case tried as a bench trial. Whatever right the defendants had to demand that this action be tried before a judge and not a jury was thus waived. *See Rule* 805.01(3), STATS. ("The failure of a party to demand in accordance with sub. (2) a trial in the mode to which entitled constitutes a waiver of trial in such mode.").

*By the Court.*—Judgment affirmed.