Kathryn BELICH, Plaintiff-Appellant,†

James A. BEAUDRY, Appellant,

v.

Steven SZYMASZEK, Defendant-Respondent.

Court of Appeals

*No. 97–3447. Submitted on briefs October 21, 1998.—Decided January 13, 1999.*

(Also reported in 592 N.W.2d 254.)

†Petition to review denied.

On behalf of the plaintiff-appellant, the cause was submitted on the briefs of *James A. Beaudry* of Hales Corners.

On behalf of the defendant-respondent, the cause was submitted on the brief of *Mark A. Phillips, Law Offices of Mark A. Phillips, S.C.* of Brookfield.

Before Brown, Nettesheim and Anderson, JJ.

ANDERSON, J. Kathryn Belich appeals the summary judgment granted to Steven Szymaszek. Belich's attorney, James A. Beaudry, also appeals an order finding Belich's lawsuit frivolous and awarding attorney's fees to Szymaszek. The trial court found that Beaudry failed to conduct an adequate investigation of Belich's claims during and before proceeding with the lawsuit against Szymaszek. We affirm the trial court's decisions and also determine this appeal to be frivolous; accordingly, we award Szymaszek his reasonable appellate attorney's fees and expenses.

Belich commenced this action against Szymaszek alleging that during the late summer of 1995, while replacing windows in her residence, he stole $60,000 that she kept stashed in a first floor office. Although Belich obtained a default judgment when Szymaszek failed to enter an appearance, she stipulated to reopening the case because she attempted to serve Szymaszek by publication rather than personally. After discovery, Szymaszek filed a motion for summary judgment on July 10, 1997. Because Belich's response was not served within the time limits of § 802.08, STATS., and the rules of the Racine County Circuit Court, Szymaszek moved to strike the response to the motion. The circuit court declined to consider Belich's untimely response to the summary judgment motion and granted Szymaszek's motion for summary judgment.

Subsequently, the circuit court held that before signing the summons and complaint, counsel for Belich, Beaudry, failed to make a reasonable inquiry to determine if Belich's story was well-grounded in fact as required by § 802.05, STATS. The circuit court granted Szymaszek's motion for reasonable attorney's fees in the amount of $6660 and costs of $758.05.

On appeal, Belich complains that the circuit court erred in not considering that she could have established her claim against Szymaszek with circumstantial evidence. She asserts that the uncontradicted evidence in Szymaszek's submissions supports a reasonable inference that Szymaszek was the only person who had the opportunity to purloin the $60,000 she had concealed in her residence. Belich and Beaudry, her attorney, complain that the circuit court was without authority to assess attorney fees under § 802.05, STATS.

We review a motion for summary judgment using the same methodology as the trial court. *See M & I First Nat'l Bank v. Episcopal Homes Management, Inc.*, 195 Wis. 2d 485, 496, 536 N.W.2d 175, 182 (Ct. App. 1995); § 802.08(2), STATS. That methodology is well known, and we will not repeat it here except to observe that summary judgment is appropriate when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *See M & I First Nat'l Bank*, 195 Wis. 2d at 496–97, 536 N.W.2d at 182.

When a circuit court strikes materials filed late and grants summary judgment accordingly, our de novo review is limited to the parties' submissions which are properly before the circuit court. *See Community Newspapers, Inc. v. City of West Allis*, 158 Wis. 2d 28, 31–33, 461 N.W.2d 785, 786–87 (Ct. App. 1990). Consequently, our review is limited to the materials submitted by Szymaszek in support of his motion for summary judgment.

The materials Szymaszek submitted to support his motion for summary judgment reveal the following. In the summer of 1995, Szymaszek was a college student and was in the Kathryn and Rudolph Belich residence on August 17, 1995, as part of a two-man crew installing vinyl replacement windows. The night before, Belich counted the money she had allegedly saved from more than thirty years of disability checks. Belich averred that she had the cash mostly in twenty dollar bills, she kept the money in envelopes, each with one thousand dollars, and stored the envelopes in two plastic freezer bags and a bank pouch. In a deposition,

Belich testified that she kept the money in the typewriter compartment of a desk; the two freezer bags and pouch were only visible if a person would stoop down and look at the back of the desk.

Szymaszek started working in the Belichs' kitchen. Eventually he moved to the first floor office where Belich claims to have secreted $60,000. Belich went into the office first to make a clear work area for Szymaszek; despite the substantial cash she kept secreted in the office, she did not stay and watch him while he replaced the window. The door to the office was never closed and Szymaszek was alone for approximately thirty minutes to complete the window replacement. He then carried the old window outside through the kitchen and Belich held the kitchen door open for him. Belich testified that Szymaszek was wearing shorts and a T-shirt, but she did not see any unusual bulges in his clothing as he walked past her with the window from the office. Belich also testified that she saw nothing to indicate the two freezer bags and bank pouch were hidden in the framing of the old window that Szymaszek carried past her. Szymaszek stacked the old window in the yard with all the other windows. When the window replacements were completed, Szymaszek and his partner carried the old windows to the Belichs' barn and then they had lunch in their truck. Belich discovered the money was missing three days later but did not report it to the sheriff's department for another month.

Belich argues that from these facts, which she does not dispute, there is a reasonable inference that Szymaszek was the only person in the office, close to the desk where the money was secreted, between the time she last counted the money and three days later when she discovered the cash missing. Her major objec-

tion is that in granting summary judgment to Szymaszek, the circuit court ignored the long-standing rule that a plaintiff can prove his or her case with circumstantial evidence. *See Pfeifer v. Standard Gateway Theater, Inc.*, 259 Wis. 333, 337, 48 N.W.2d 505, 507 (1951).

Belich is generally correct that a party can rely on circumstantial evidence. She is also correct when she argues that summary judgment should not be granted if reasonable, but differing, inferences can be drawn from undisputed facts. *See Delmore v. American Family Mut. Ins. Co.*, 118 Wis. 2d 510, 516, 348 N.W.2d 151, 154 (1984). However, she fails to grasp the significance of the requirement that the competing inferences be "reasonable." An elementary principle is that an inferred fact is a logical, factual conclusion drawn from basic facts or historical evidence. It is the probability that certain consequences can and do follow from basic events or conditions as dictated by logic and human experience. Building on this elementary principle is the principle that a reasonable inference is a conclusion arrived at by a process of reasoning. This conclusion must be a rational and logical deduction from facts admitted or established by the evidence when such facts are viewed in the light of common knowledge or common experience. *See State ex rel. N.A. C. v. W.T.D.*, 144 Wis. 2d 621, 636, 424 N.W.2d 707, 713 (1988). Further, an inference is not supposition or conjecture; it is a logical deduction from facts proven and guesswork cannot serve as a substitute. *See Merco Distrib. Corp. v. Commercial Police Alarm Co., Inc.*, 84 Wis. 2d 455, 460, 267 N.W.2d 652, 655 (1978).

There are no uncontradicted, historical facts in Szymaszek's summary judgment materials that lead a

person to fairly and reasonably conclude that he stole the money. Belich opposes the summary judgment motion with nothing more than speculation and conjecture from the undisputed evidence. It is an unreasonable supposition to conclude that Szymaszek stole the money. To reach such a conclusion, a person would have to create the following scenario: Szymaszek, while working in the office with the door open, stooped down behind the desk and found two freezer bags and a bank pouch. He then was able to secret them on himself, so there were no bulges in his shorts or shirt, or secret them in the frame of the old window so well that the bags were not visible as he walked past Belich as she held the door open for him. Such a scenario is nothing more than a threadbare conclusory statement that does not defeat a motion for summary judgment. No "reasonable" inference can be drawn that Szymaszek stole the money.

## ATTORNEY FEES

### *Award Pursuant to §§ 802.05 and 814.025, STATS.*

We will now address Belich & Beaudry's (hereinafter collectively referred to as "Belich") contention that the trial court did not have authority to award attorney fees under § 802.05, STATS.[1] In support of her argu-

---

[1] Section 802.05(1)(a), STATS., provides in relevant part:

Every pleading, motion or other paper of a party represented by an attorney shall contain the name . . . of the attorney . . . and shall be subscribed with the handwritten signature of at least one attorney of record in the individual's name. . . . *The signature of an attorney or party constitutes a certificate that the attorney or party has read the pleading, motion or other paper; that to the best of the attorney's or party's knowledge, information and belief, formed after reasonable inquiry, the pleading, motion or other paper is well-grounded in fact* and is warranted by existing law or a good faith argument for

ment, Belich contends that notwithstanding the fact that Szymaszek filed a motion for attorney fees pursuant to § 814.025, STATS., the "trial court did not have jurisdiction to award reasonable attorney fees under 802.05 STATS. without the opposing party having made a motion for fees under 802.05." We disagree.

Because this statutory inquiry presents a question of law, we will review the circuit court's decision de novo. *See Grube v. Daun*, 210 Wis. 2d 681, 687, 563 N.W.2d 523, 526 (1997). When interpreting a statute, our goal is to ascertain and give effect to the legislature's intent. *See Lake City Corp. v. City of Mequon*, 207 Wis. 2d 155, 162, 558 N.W.2d 100, 103 (1997). If the meaning of a statute is clear from its language, we are prohibited from looking beyond such language. *See Stockbridge Sch. Dist. v. Department of Pub. Instruction Sch. Dist. Boundary Appeal Bd.*, 202 Wis. 2d 214, 220, 550 N.W.2d 96, 98 (1996).

Szymaszek moved for attorney fees against Belich on the grounds of § 814.025, STATS. Section 814.025 allows for costs and reasonable attorney fees to be awarded to the successful party if an action is determined to be frivolous by the court. Belich argues that

the extension, modification or reversal of existing law; and that the pleading, motion or other paper is not used for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation. . . . If the court determines that an attorney or party failed to read or make the determinations required under this subsection before signing any petition, motion or other paper, *the court may, upon motion or upon its own initiative, impose an appropriate sanction on the person who signed the pleading, motion or other paper*, or on a represented party, or on both. The sanction may include an order to pay to the other party the amount of reasonable expenses incurred by that party because of the filing of the pleading, motion or other paper, including reasonable attorney fees. [Emphasis added.]

the trial court erred when it "without having given the plaintiff the opportunity to respond[,] simply awarded costs under Wisconsin Statute Section 802.05 notwithstanding the fact that a motion was never made under that section of the statute."[2] On the contrary, we agree with the trial court's decision to base the attorney fees award on *both* §§ 814.025 and 802.05, STATS.

■

The trial court ordered that attorney fees and costs be awarded "upon Motion of the defendant and upon its own initiative as provided under Sec. 802.05, Wis. Stats." In its conclusions of law, the court explained:

> That the defendant filed his Motion for sanctions under Sec. 814.025 which includes a reference at sub (4) to 802.05, Wis. Stats., in a timely fashion prior to the Summary Judgment Motion on August 13, 1997.

Indeed, § 814.025(4), STATS., incorporates § 802.05, STATS., stating that "[t]o the extent s. 802.05 is applicable and differs from this section, s. 802.05 applies." It is apparent that the legislature intended for §§ 802.05 and 814.025 to work together to deter the filing of frivolous claims. Additionally, it is a well-established rule that a trial court has both statutory and inherent authority to sanction a party for failing to comply with procedural rules and for failing to obey court orders.

---

[2] Part of Belich's argument here is that she did not have adequate notice of the possibility of the trial court awarding attorney fees. We caution counsel to closely examine § 802.05, STATS., where a document-signing attorney's duties and responsibilities are detailed. There it is stated that if a court determines that the document-signing attorney neglected his or her duties before signing the document, the court may impose sanctions. *See id.*

*See* § 805.03, STATS.; *Johnson v. Allis Chalmers Corp.*, 162 Wis. 2d 261, 273–74, 470 N.W.2d 859, 863 (1991). Therefore, Belich's complaint that the trial court was without authority to award attorney fees under § 802.05 is without merit.

### Duty to Conduct a Reasonable Inquiry

Next, we consider Belich's argument that the trial court misused its discretion when it held that she and her counsel's prosecution of this action without an adequate investigation entitled Szymaszek to actual attorney's fees and costs. To support this argument, Belich contends that it is permissible for a reasonable attorney to rely on circumstantial evidence to prove a case. Belich warns that, if "[l]ogically followed[,] the trial court's reasoning would require the hiring of a private investigator every time an alleged thief denies stealing money." We disagree with this over-generalization, but will take this opportunity to examine what constitutes the meaning of a "reasonable inquiry" of the facts of a claim as required in § 802.05, STATS.

We will review this issue with deference to the trial court's decision. *See Riley v. Isaacson*, 156 Wis. 2d 249, 256, 456 N.W.2d 619, 622 (Ct. App. 1990). Determining what and how much prefiling investigation was done is a question of fact. *See id.* For questions of fact, we will not disturb the trial court's findings unless they are clearly erroneous. *See id.* However, determining how much investigation *should* have been done is a matter within the trial court's discretion because the amount of research necessary to constitute a "reasonable inquiry" may vary, depending on such things as the particular issue involved and the stakes of the case. *See id.* While reviewing a trial court's discretionary act, we

will sustain it if the court examined the relevant facts, applied a proper standard of law and, using a demonstrated rational process, reached a conclusion that a reasonable judge could reach. *See id.*

Section 802.05(1)(a), STATS., requires that by signing a document to be filed with the court, the attorney is certifying that to the best of his or her "knowledge, information and belief, *formed after a reasonable inquiry*" the document is "well-grounded in fact and is warranted by existing law or a good faith argument for the extension, modification or reversal of existing law." (Emphasis added.) The statute also permits the court to impose sanctions on an attorney who fails to make the required determinations before signing the document. *See id.*

Section 802.05, STATS., was patterned after Federal Rules of Civil Procedure 11, *see Riley,* 156 Wis. 2d at 255, 456 N.W.2d at 621, and both have the same purpose: to impose sanctions upon counsel who file documents with the court without conducting an adequate investigation of the issues or with improper motives behind the filing, *cf. Mars Steel Corp. v. Continental Bank, N.A.,* 880 F.2d 928, 932 (7th Cir. 1989). To perform an adequate investigation before proceeding with a claim, it is clear that an attorney may not simply rely on his or her client's word. *See Riley,* 156 Wis. 2d at 259, 456 N.W.2d at 623. Rather, the attorney is expected to read and consider before litigating. *See id.* It is impossible to create a general definition of what constitutes a reasonable prefiling investigation because what will be reasonable depends on the circumstances of each case. *See Lebovitz v. Miller,* 856 F.2d 902, 905 (7th Cir. 1988). We will determine the reasonableness of the attorney's inquiry into the facts of the case by considering these factors: the amount of

time the attorney had to investigate the claims; the extent to which the attorney had to rely upon his or her client for the underlying facts; whether the case was accepted from another attorney; the complexity of the facts; and whether discovery would benefit the factual record. *See Brown v. Federation of State Med. Bds.*, 830 F.2d 1429, 1435 (7th Cir. 1987).

Applying these factors to the present case, we conclude that Belich's counsel did not undertake an adequate prefiling investigation and did not conduct any postfiling discovery to confirm Belich's narrative. The trial court found that Beaudry relied exclusively on the facts that his client recounted during his interviews with her and her husband. The trial court faulted Beaudry for not performing even the most rudimentary check on his client's statements. The duty to conduct a reasonable inquiry mandates an attorney to affirmatively validate his or her client's representations of the facts before proceeding with a complaint. *See Riley*, 156 Wis. 2d at 259, 456 N.W.2d at 623. An attorney must assure himself or herself that the client's story "passes the smell test." In this case, Beaudry should have been alerted to "holes" in Belich's story when he was told that the money was not discovered missing until three days after Szymaszek was on the premises and Belich did not report the money missing to her husband for an additional thirty days. The unexplained delay in reporting the theft of $60,000 should have alerted Beaudry that the reason for the delay must be ascertained. Beaudry's review of the police report should also have set off warning bells. The police report contained interviews with Belich, Szymaszek and his coworker; the investigation was closed after leads were exhausted; and, the complaint was never referred for criminal prosecution.

At a minimum, the reasonable inquiry standard requires at least some affirmative investigation on the part of the signer. *See In re KTMA Acquisition Corp.*, 153 B.R. 238, 248–49 (Bankr. D. Minn. 1993). Section 802.05(1), STATS., imposes on the attorney a duty to "look before leaping" and may be seen as a litigation version of the familiar railroad crossing admonition to "stop, look and listen." *See id.* at 249. The investigation need not be to the point of certainty to be reasonable. *See id.* Nonetheless, the signer must explore readily available avenues of factual inquiry; however, the signer is not required to take steps that are not cost justified or unlikely to produce results. *See Szabo Food Serv., Inc. v. Canteen Corp.*, 823 F.2d 1073, 1083 (7th Cir. 1987). In the complaint Beaudry signed, it was alleged that Szymaszek stole $60,000; this allegation of criminal wrongdoing on the part of Szymaszek is such an extremely serious charge that it required a serious investigation by Beaudry before he acted. *See Anderson v. County of Montgomery*, 111 F.3d 494, 501 (7th Cir.), *cert. denied sub nom. Anderson v. Panos*, 118 S.Ct. 371 (1977).

*Riley* admonishes lawyers to "read and consider" before litigating. Accordingly, before making such a serious charge, Beaudry was required to consider whether Belich's allegations comported with common sense and human experience. *See Riley*, 156 Wis. 2d at 259, 456 N.W.2d at 623. Belich's allegations should have alerted Beaudry to ask a simple series of common-sense questions. Why did Belich keep $60,000 in cash close to locations where strangers were working? Why didn't she pay closer attention to the workers when they were in the vicinity of the cash? How could Szymaszek secret 3000 twenty dollar bills on his person when he was wearing shorts and a T-shirt? Why

didn't Belich check the office immediately after Szymaszek completed his work in that room? Why did it take Belich three days to investigate whether the money was still stashed in its hiding place? And, why did Belich delay for one month before reporting the theft to her husband? Beaudry should also have taken the time to ask these questions of himself. Belich's factual recitation was so contrary to human experience as to demand Beaudry to test it against his common sense and his personal observations and experiences in the affairs of life. Beaudry did not conduct a reasonable inquiry when he failed to consider the unreasonableness of Belich's historical account of the disappearance of $60,000.

In his defense, Beaudry asserts that he should have been entitled to prove the case by circumstantial evidence. Beaudry admitted that his investigative actions in this case to uncover this circumstantial evidence were limited to interviewing his client and her husband and to reviewing the police report of the theft. We see no difference between these investigative actions and simply taking his client at her word. As we have previously mentioned, an attorney's instinct is to believe his or her client; however, "not all clients may possess the highest standards of integrity." *Riley*, 156 Wis. 2d at 259, 456 N.W.2d at 623. We caution counsel that "[a]n empty head but pure heart is no defense"; attorneys are expected to conduct a reasonable and thoughtful inquiry into a claim before filing any document with the court. *Id*. (quoted source omitted).

The trial court also found that after filing the complaint Beaudry failed to undertake any discovery to determine whether his allegations were well-grounded in fact. Beaudry's failure to undertake discovery further supports the conclusion that this action is

frivolous. We note, however, that it is not permissible to file a lawsuit and speculate that through discovery the attorney will find out if he or she has a case.

The Wisconsin Supreme Court recognizes that it is not always possible for an attorney to have all the facts when he or she drafts a pleading. *See Stern v. Thompson & Coates, Ltd.*, 185 Wis. 2d 220, 235, 517 N.W.2d 658, 663 (1994). In *Kelly v. Clark*, 192 Wis. 2d 633, 650–51, 531 N.W.2d 455, 460–61 (Ct. App. 1995), we commented that:

> *Stern* gives attorneys and parties reasonable latitude to "mak[e] some claims which are not entirely clear in the law or on the facts," provided the attorney or party acts promptly to determine and clarify any unclear facts. . . . In a sense, *Stern* gives parties and attorneys a "safe harbor" in that they may file a pleading without fear of sanctions as long as they make a reasonable inquiry as to uncertain or unclear facts within a reasonable time after the pleading is filed. [Citation omitted.]

Despite this "safe harbor," counsel must have the outline of a claim at the beginning and use discovery to fill in the details. *See Szabo Food Service*, 823 F.2d at 1083. Beaudry never had the outline of a claim and failed to fill in the details.

We recognize that counsel has a duty to zealously represent his or her client's interests. *See Stern*, 185 Wis. 2d at 235, 517 N.W.2d at 663. Nonetheless, counsel also has an analogous duty to his or her adversary to avoid needless legal costs and delays. *See Mars Steel Corp.*, 880 F.2d at 932. And, there is a corresponding duty to the "legal system (that is, to litigants in other cases) . . . to avoid clogging the courts with paper that wastes judicial time and thus defers the disposition of

other cases or, by leaving judges less time to resolve each case, increases the rate of error. [Section 802.05(1), STATS.,] allows judges to husband their scarce energy for the claims of litigants with serious disputes needing resolution." *Mars Steel Corp.*, 880 F.2d at 932. Counsel cannot drop papers into the hopper and require that the court and adversary counsel undertake bothersome factual and legal investigation. *See id.*

After considering the relevant facts before it and applying the proper law, the trial court reasonably and rationally concluded that Beaudry failed to first make a reasonable inquiry to determine whether Belich's claims were well-grounded in fact as required by § 802.05, STATS. Additionally, the court properly exercised its statutory authority when it awarded attorney fees pursuant to §§ 802.05 and 814.025, STATS. In sum, the award of costs and attorney fees and the grant of summary judgment were appropriate. Accordingly, we affirm.

Finally, we award reasonable attorney fees and expenses for this appeal and remand to the trial court for a determination on this issue. Our conclusion that the trial court correctly adjudged the matter frivolous renders the appeal frivolous per se. *See Riley*, 156 Wis. 2d at 262, 456 N.W.2d at 624.

*By the Court.*—Judgment and order affirmed and cause remanded with directions.