WISCONSIN CHIROPRACTIC ASSOCIATION, Plaintiff-Respondent,

v.

STATE of Wisconsin CHIROPRACTIC EXAMINING BOARD, Defendant,

Dale STRAMA, Defendant-Appellant.

Court of Appeals

*No. 03–0933. Submitted on briefs October 14, 2003.—Decided January 29, 2004.*

2004 WI App 30

(Also reported in 676 N.W.2d 580.)

843

845

On behalf of the defendant-appellant, the cause was submitted on the briefs of *Jon P. Axelrod* and *Bradley C. Fulton, DeWitt Ross & Stevens S.C.*, Madison.

On behalf of the plaintiff-respondent, the cause was submitted on the brief of *Marie A. Stanton, Hurley, Burish & Milliken. S.C.*, Madison.

Before Deininger, P.J., Dykman and Vergeront, JJ.

¶ 1. VERGERONT, J. Dale Strama is seeking the attorney fees he incurred in defending against the Wisconsin Chiropractic Association's complaint, which the Association voluntarily dismissed and which Strama asserts was frivolous. The trial court denied his motion seeking fees under Wis. Stat. §§ 802.05(1) and 814.025(3)(a) and (b) (2001–02)[1] and denied his motion for reconsideration and for an evidentiary hearing. We conclude the court applied incorrect legal standards and that an evidentiary hearing is required to resolve factual disputes. We therefore reverse and remand for an evidentiary hearing consistent with this decision.

## BACKGROUND

¶ 2. Strama is a chiropractor licensed to practice in the State of Wisconsin and a shareholder in the chiropractic group, Allied Health of Wisconsin, S.C. (Allied Health). At the time relevant to this action, he was serving on the State of Wisconsin Chiropractic Examining Board, having been appointed in 1993, and he had been elected chair of the Board.

---

[1] All references to the Wisconsin Statutes are to the 2001–02 version unless otherwise noted.

¶ 3. On July 19, 2002, the Association filed a complaint against Strama and the Board concerning the Board's approval of continuing education (CE) credits for programs sponsored or co-sponsored by Allied Health. The complaint alleged that Allied Health did not qualify as a sponsor of CE programs under the Wisconsin Administrative Code. In the "claim" section of the complaint, the Association alleged that Strama financially benefited from CE approval for Allied Health programs, Strama was "a public official subject to the standards of conduct and conflict of interest rules in §§ 19.45 and 19.46 Stats," and "approval of Allied Health sponsored or co-sponsored seminars, without recusal of Board member Strama, constituted a violation of ethical standards of conduct for public officials, §§ 19.45(2), (5) and 19.46(1)(a), (b) Stats."[2] The com-

---

[2] WISCONSIN STAT. § 19.45(2) and (5) provide as follows:

**(2)** No state public official may use his or her public position or office to obtain financial gain or anything of substantial value for the private benefit of himself or herself or his or her immediate family, or for an organization with which he or she is associated . . . .

. . . .

**(5)** No state public official may use or attempt to use the public position held by the public official to influence or gain unlawful benefits, advantages or privileges personally or for others.

WISCONSIN STAT. § 19.46(1)(a) and (b) provide as follows:

**Conflict of interest prohibited; exception. (1)** Except in accordance with the board's advice under sub. (2) and except as otherwise provided in sub. (3), no state public official may:

(a) Take any official action substantially affecting a matter in which the official, a member of his or her immediate family, or an organization with which the official is associated has a substantial financial interest.

plaint sought a declaratory judgment against the Board and Strama declaring that it was the duty of Board members, including Strama, to recuse themselves from participating in the consideration and approval of applications for CE credit when the member had an ownership interest or received other benefits from the sponsor. The complaint also sought a mandamus against the Board revoking approval of CE credit for all programs sponsored or co-sponsored by Allied Health.

¶ 4. On August 14, 2002, Strama moved to dismiss the complaint against him on the ground that it was false, frivolous, and had been filed in bad faith and for the purpose of harassing or maliciously injuring him; and he requested attorney fees under WIS. STAT. § 814.025.

¶ 5. In his affidavit accompanying the motion, Strama averred that he had never voted as a Board member on any matter concerning Allied Health nor was he consulted on any. He also averred that on the date the Association filed its complaint, it issued a news release to its members about the lawsuit, and that the Association induced the International Chiropractic Association (ICA) to include a portion of the news release in a mailing to all ICA members. Two other affidavits Strama filed explained that the Board had delegated to a member, not Strama, the responsibility for approving credits, and more recently staff at the Department of Regulation and Licensing (DRL) had taken on a greater role, subject to the designated member's oversight. Both affidavits supported Strama's averment that he had no

(b) Use his or her office or position in a way that produces or assists in the production of a substantial benefit, direct or indirect, for the official, one or more members of the official's immediate family either separately or together, or an organization with which the official is associated.

involvement in approving credits for programs sponsored or co-sponsored by Allied Health.

¶ 6. The Association opposed dismissal in a brief filed on September 17, 2002. The Association asserted its legal theory was that, even though CE credit approval was delegated to a Board member other than Strama, that Board member was an agent of the Board, which included Strama, and Strama's conflict was therefore imputed to that Board member. The Association also submitted an affidavit averring that Strama had participated in a discussion of how organizations can become approved sponsors for CE programs, which specifically mentioned Allied Health; according to the Association this was evidence that Strama was influencing the Board delegate responsible for approving CE credit. Finally, the Association asserted that it needed time to conduct depositions of the Board members to learn of Strama's involvement.

¶ 7. Nine days later the Association filed a motion for voluntary dismissal of the complaint against Strama, stating that "after further investigation and discovery [the Association believed] it [would] not meet its burden of proof against [Strama]." Based on a stipulation between the Association and Strama, the court entered an order dismissing the complaint against him with prejudice, leaving the issue of attorney fees for the court to resolve if the parties could not reach an agreement within a specified time.

¶ 8. The Board also moved to dismiss on the ground the complaint did not state a claim for relief against it. In October 2002, the Association and the Board stipulated to dismissal of the complaint against the Board, with prejudice and without costs, fees, or interest.

¶ 9. Because Strama and the Association were unable to resolve the issue of attorney fees, they filed briefs on the issue, with Strama requesting fees under both WIS. STAT. §§ 814.025 and 802.05. The court issued a written decision denying fees under both statutes. The court stated that the Association's agency legal theory, although "later shown to be incorrect," was not frivolous. The court observed that under this legal theory it was irrelevant whether Strama voted on the CE credit approvals for Allied Health. Nonetheless, the court found, the Association had made an effort before filing the complaint to find out if Strama had voted on these approvals. The court relied on deposition testimony of Russell Leonard, executive director of the Association, in which he stated that he had asked John Schweitzer, a DRL attorney, whether Strama had approved or voted on approval of programs sponsored or co-sponsored by Allied Health, and Schweitzer said he was not certain. The court also relied on Leonard's affidavit averring that he had had several conversations with Strama on the subject of Strama's involvement in approval of Allied Health CE programs in which Strama had "acted defensively"[3] and at one point said he intended to "break up the monopoly" that the Association had on continuing education. The court acknowledged that Strama's affidavit denied having made the statements Leonard attributed to him, but in the court's

<hr>

[3] We understand the court's statement that Strama "reacted defensively" to be the court's characterization of Leonard's averments of what Strama said to him: that Leonard himself had a conflict of interest because Leonard potentially received compensation on an indirect basis from the Association for the CE programs it conducted and he, Strama, had no conflict that was greater than Leonard's.

view it was "not now engaged in determining facts" and was required to "take Leonard's affidavit at face value for purposes of a frivolousness inquiry." The court determined that, based on "the resistant responses of Strama and the Board to Leonard's inquiries," it was reasonable for the Association to conclude it would have to file suit to determine whether its suspicions were true.

¶ 10. The court also determined that the Association did not act unreasonably in not voluntarily dismissing the complaint before September 26, 2002, for the following reasons: Strama did not file his motion to dismiss and submissions until August 14; the hearing was set for October 2; the Association promptly undertook written discovery; it had not had the opportunity sooner to take depositions of the Board members; and the Association contended that, without an answer from Strama, it did not know what issues were joined.

¶ 11. With respect to Strama's contention that the Association filed the complaint for the purpose of injuring him, the court found the only evidence of this was Strama's averments concerning the Association's news release and inducing ICA to send a portion to all its members. However, the court stated, according to Leonard, ICA picked up and published the information on its own. The court again acknowledged that Strama had submitted an affidavit disputing this, but, the court stated, it could not decide to believe Strama rather than Leonard "in the context of this inquiry."

¶ 12. After the court issued this decision, Strama moved for reconsideration and an evidentiary hearing, asserting that the court had resolved factual disputes against him in its decision. The court denied the motion without an explanation.[4]

## APPLICABLE LAW AND STANDARD OF REVIEW

¶ 13. Pursuant to WIS. STAT. § 802.05(1),[5] a person who signs a pleading makes three warranties:

---

[4] Strama had added to his motion an order that provided a place for the court to check either that it was or was not granting the motion, and the court used this form for the order denying the motion.

[5] WISCONSIN STAT. § 802.05(1) provides:

> **(1)**(a) Every pleading, motion or other paper of a party represented by an attorney shall contain the name . . . of the attorney . . . and shall be subscribed with the handwritten signature of at least one attorney of record in the individual's name . . . . The signature of an attorney or party constitutes a certificate that the attorney or party has read the pleading, motion or other paper; that to the best of the attorney's or party's knowledge, information and belief, formed after reasonable inquiry, the pleading, motion or other paper is well-grounded in fact and is warranted by existing law or a good faith argument for the extension, modification or reversal of existing law; and that the pleading, motion or other paper is not used for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation . . . . If the court determines that an attorney or party failed to read or make the determinations required under this subsection before signing any petition, motion or other paper, the court may, upon motion or upon its own initiative, impose an appropriate sanction on the person who signed the pleading, motion or other paper, or on a represented party, or on both. The sanction may include an order to pay to the other party the amount of reasonable expenses incurred by that party because of the filing of the pleading, motion or other paper, including reasonable attorney fees.

> First, the person who signs a pleading, motion or other paper certifies that the paper was not interposed for any improper purpose. Second, the signer warrants that to his or her best "knowledge, information and belief formed after reasonable inquiry" the paper is "well grounded in fact." Third, the signer also certifies that he or she has conducted a reasonable inquiry and that the paper is warranted by existing law or a good faith argument for a change in it.

*Jandrt v. Jerome Foods, Inc.*, 227 Wis. 2d 531, 548, 597 N.W.2d 744 (1999) (citation omitted). If the circuit court finds that any one of the three requirements set forth under the statute has been disregarded, it may impose an appropriate sanction on the person signing the pleading or on a represented party or both. *Id.*; *see also* § 802.05(1)(a).

¶ 14. In deciding whether an attorney signing a pleading made a reasonable inquiry into the facts and law of a case, the court uses an objective standard, asking what a reasonable attorney should have done under the circumstances that existed at the time of the challenged filing. *Jandrt*, 227 Wis. 2d at 549–51. Applying this objective standard, a court should consider these factors in determining whether an attorney made a reasonable inquiry to the facts:

> whether the signer of the documents had sufficient time for investigation; the extent to which the attorney had to rely on his or her client for the factual foundation underlying the pleading, motion, or other paper; whether the case was accepted from another attorney; the complexity of the facts and the attorney's ability to do a sufficient pre-filing investigation; and whether discovery would have been beneficial to the development of the underlying facts.

*Id.* at 550.

853

¶ 15. An attorney may rely upon his or her client for the factual basis for a claim when the client's statements are objectively reasonable, but this does not mean that an attorney always acts reasonably in accepting a client's statements. *Id.* at 556. Whether it is reasonable to rely on one's client depends in part upon whether there is another means to verify what the client says without discovery. *See id.* at 556–57. A party and attorney may not rely on formal discovery after the filing of a suit to establish the factual basis for the cause of action when the required factual basis could be established without formal discovery. *Id.* at 568. In addition, in deciding whether to rely on one's client for the factual foundation of a claim, an attorney must carefully question the client and determine if the client's knowledge is direct or hearsay and is plausible; the attorney may not accept the client's version of the facts on faith alone. *Id.* at 556. Allegations by a client of serious misconduct of another may require a more serious investigation. *See Belich v. Szymaszek*, 224 Wis. 2d 419, 432, 592 N.W.2d 254 (Ct. App. 1999). While the investigation need not be to the point of certainty to be reasonable and need not involve steps that are not cost-justified or are unlikely to produce results, the signer must explore readily available avenues of factual inquiry rather than simply taking a client's word. *Id.* at 432–33.

¶ 16. When we review the grant or denial of attorney fees under Wis. Stat. § 802.05(1), our standard of review varies depending on the issue presented. The first warranty—that the pleading is not used for an improper purpose—requires factual findings, and we

854

accept factual findings made by the trial court unless they are clearly erroneous. WIS. STAT. § 805.17(2); *see also Stern v. Thompson & Coates, Ltd.*, 185 Wis. 2d 220, 236, 517 N.W.2d 658 (1994). With respect to the second and third warranties, we uphold factual findings made on what prefiling investigation was done unless they are clearly erroneous. *Jandrt*, 227 Wis. 2d at 548. However, the issue of what investigation should have been done is committed to the trial court's discretion, and we therefore affirm if the court examined the relevant facts, applied the correct legal standard, and, using a demonstrated process, reached a conclusion that a reasonable judge could reach. *Id.* at 548–49. With respect to the third warranty, the issue of whether a legal theory is justified by existing law or a good faith argument for a change in the law presents a question of law, and our review on this issue is therefore de novo. *State ex rel. Robinson v. Town of Bristol*, 2003 WI App 97, ¶ 29, 264 Wis. 2d 318, 667 N.W.2d 14.

¶ 17. WISCONSIN STAT. § 814.025, like WIS. STAT. § 802.05, authorizes a court to sanction a party or attorney for commencing a frivolous action, but only § 814.025 also authorizes the imposition of sanctions for continuing a frivolous action.[6] *Jandrt*, 227 Wis. 2d at 547. Section 814.025(3)(b) is similar to the second

---

[6] WISCONSIN STAT. § 814.025 provides in relevant part:

**Costs upon frivolous claims and counterclaims.** **(1)** If an action or special proceeding commenced or continued by a plaintiff or a counterclaim, defense or cross complaint commenced, used or continued by a defendant is found, at any time during the proceedings or upon judgment, to be frivolous by the court, the court shall award to the successful party costs determined under s. 814.04 and reasonable attorney fees.

. . . .

and third warranties under § 802.05 in that it defines as frivolous an action that is commenced or continued when the "party or the party's attorney knew, or should have known, that the action . . . was without any reasonable basis in law or equity and could not be supported by a good faith argument for an extension, modification or reversal of existing law." This definition includes the situation in which the party or attorney knows or reasonably should know that the facts necessary to meet the requirements of the allegations are not present. *Stern*, 185 Wis. 2d at 244.

¶ 18. The inquiry under WIS. STAT. § 814.025(3)(b) is an objective one, focusing on what a reasonable attorney or party should have known. *Id.* at 241. Even though a party may have conducted a reasonable inquiry into the law or facts before filing an action given the time limits or other constraints, under § 814.025 there is a continuing obligation to ensure the action is well-grounded in fact and law. *Jandrt*, 227 Wis. 2d at 563. Once a party or attorney knows or should know that a claim is not supported by fact or law, it must dismiss or risk sanctions. *Id.*

---

**(3)** In order to find an action . . . to be frivolous under sub. (1), the court must find one or more of the following:

(a) The action, special proceeding, counterclaim, defense or cross complaint was commenced, used or continued in bad faith, solely for purposes of harassing or maliciously injuring another.

(b) The party or the party's attorney knew, or should have known, that the action . . . was without any reasonable basis in law or equity and could not be supported by a good faith argument for an extension, modification or reversal of existing law.

¶ 19. WISCONSIN STAT. § 814.025(3)(a) in some respects parallels the first warranty under WIS. STAT. § 802.05(1). This subsection defines as frivolous an "action . . . commenced, used or continued in bad faith, solely for purposes of harassing or maliciously injuring another," and the inquiry is a subjective one—what was in the person's mind and what were the motivations. *Stern*, 185 Wis. 2d at 235–36.[7]

¶ 20. As under WIS. STAT. § 802.05(1), under WIS. STAT. § 814.025(2) fees may be assessed fully against the party, fully against the party's attorney, or may be apportioned between them. Section 814.025(2). Also as under § 802.05(1), we affirm the trial court's findings of fact under § 814.025(3)(a) and (b) if they are not clearly erroneous, but whether the facts as found fulfill the statutory standards presents a question of law, which we review de novo. *Stern*, 185 Wis. 2d at 236.

¶ 21. When there are disputed issues of fact necessary to a determination on sanctions under WIS. STAT. § 802.05(1) or frivolousness under WIS. STAT. § 814.025, the trial court must hold an evidentiary hearing to resolve them. *See Kelly v. Clark*, 192 Wis. 2d 633, 653–54, 531 N.W.2d 455 (Ct. App. 1995).

¶ 22. The legislature intended WIS. STAT. §§ 802.05 and 814.025 to work together to deter the filing of frivolous claims. *Belich*, 224 Wis. 2d at 428. However, to the extent § 802.05 is applicable and differs

---

[7] We observe that WIS. STAT. § 814.025(3)(a) contains the word "solely" while WIS. STAT. § 802.05(1) does not.

from § 814.025, we apply § 802.05. Section 814.025(4). In this case, Strama relies on § 802.05 for sanctions for filing the complaint and § 814.025 for continuing the action. We frame our analysis accordingly and do not consider whether the result would be different if we were to apply § 814.025 to the filing of the complaint.

## DISCUSSION

### I. Filing the Complaint

#### A. Wis. Stat. § 802.05(1)—Well-Grounded in Fact

¶ 23. Strama contends he is entitled to attorney fees under Wis. Stat. § 802.05(1) because the Association and its counsel did not conduct a reasonable inquiry into the facts before filing the complaint, and the complaint was not well-grounded in fact. Strama's position is that the complaint plainly alleged that Strama violated Wis. Stat. §§ 19.45(2) and (5) and 19.46(1)(a) and (b) by not recusing himself from consideration of approval of Allied Health's CE programs, but neither the Association nor its counsel made a reasonable prefiling investigation into whether Strama was actually involved in the approval of Allied Health CE programs. Strama contends the trial court did not consider the requisite factors that militated against a reasonable prefiling investigation—the lack of any deadline for filing the complaint and the lack of complexity in the relevant facts—and did not mention evidence that shows that Strama's lack of involvement could have been ascertained without the need for discovery and without the need to rely on Leonard for the factual foundation.[8] According to Strama, this evidence is not disputed, and we should determine as a matter of

[8] According to Strama, this evidence includes the following. Meredith Bakke, a member of the Board from 1982 through

law that neither the Association nor its attorney conducted an adequate prefiling investigation into the facts. Alternatively, he argues, if there are factual disputes, the trial court erred in not holding an evidentiary hearing and we should remand for that purpose.

1995 and chair from 1987 to 1995, averred that Leonard asked her in the summer of 2002 about the Board's practice in approving continuing education programs during her tenure, and she told him that this function had been delegated to individual Board members, Breitbach, and then Greenwald; Leonard did not ask her if Strama was involved in the review and approval process, but if he had she would have said he was not. Leonard deposed that Association representatives personally attend many of the Board meetings and the Board minutes are routinely sent to his office. There is evidence the minutes from July 19, 2001, show that the Board moved to give responsibility for program approval to the DRL exams specialist, who was to bring any course he had questions or concerns about to the Board. Leonard acknowledged in his deposition that he had informally requested documents from the Board before and he understood that an agency's records were public, and if an agency were reluctant to volunteer information, its records could be requested under the public records law. Leonard also acknowledged that Strama had never told him he had personally approved a program sponsored or co-sponsored by Allied Health. John Schweitzer, counsel for the Board, averred that, since becoming legal counsel in January 1999, he had regularly attended Board meetings and could not recall that Strama ever voted on any matter involving Allied Health, ever advocated for the interest of Allied Health before the Board or involved himself in approving any CE seminars. Schweitzer also averred that the Board maintained all documents relating to the approval of CE seminars and all minutes of its meetings; had the Association made a telephone call to him or to other Board personnel or served a public records law request, the Board would have produced all the documents, responded that Strama was not involved in CE approvals, and explained the CE approval procedure.

¶ 24. The Association responds that the trial court correctly decided that it was irrelevant whether Strama was involved in the CE approval process because the Association's legal theory was based on the agency relationship to the Board of the individuals to whom the Board delegated the approval function. According to the Association, no evidentiary hearing was needed because the facts making the complaint well-grounded under this legal theory are not disputed: Allied Health was not listed as an approved sponsor for CE programs in the Wisconsin Administrative Code; Strama had a financial interest in Allied Health; and beginning in 1999, the Board approved Allied Health to sponsor CE programs.

¶ 25. We agree with Strama that the trial court applied incorrect legal standards. First, whether Strama was involved in approving CE programs sponsored by Allied Health is relevant to whether the complaint is well-grounded in fact. The trial court did not analyze the legal theory underlying the complaint but, rather, the agency legal theory that the Association presented in its brief opposing Strama's motion to dismiss, after being presented with evidence that Strama was not involved in approving CE programs sponsored by Allied Health. However, the proper inquiry under WIS. STAT. § 802.05(1) must focus on the factual allegations and the legal theory in the complaint. We conclude the only reasonable reading of the complaint against Strama is that he violated WIS. STAT. §§ 19.45(2) and (5) and 19.46(1)(a) and (b) by participating in approving CE credits for programs sponsored or co-sponsored by Allied Health because he benefited

financially from those approvals.[9] In order to prevail on this legal theory, the Association had to prove that Strama was involved in approving those CE programs. Thus, we hold as a matter of law that whether the Association or its attorney conducted a reasonable inquiry into the facts before filing the complaint requires consideration of what inquiry they made concerning Strama's involvement in the approval of CE programs sponsored by Allied Health.

¶ 26. Second, the trial court applied an incorrect legal standard when it considered, apparently as an alternative ground for its decision, the prefiling inquiry the Association made into Strama's participation in CE approvals for Allied Health programs. Although the court correctly recognized there were factual disputes on what Strama told Leonard about Strama's conflict of interest, the court believed it had to accept Leonard's version of the facts. The court did not cite to any authority for this proposition, and the Association does not provide any. It may be the trial court had in mind the valid point that, if a party or its attorney makes a reasonable prefiling inquiry into the facts, but it later turns out that what that person was told was not accurate, the inquiry is not on that basis unreasonable. However, the relevant dispute here is over what Strama said to Leonard, not over whether what Strama said was accurate. If Strama did not make the statements

---

[9] We recognize that the complaint alleges in addition that, without regard to Strama's involvement, the Board violated its own regulation by approving seminars sponsored by Allied Health because that entity did not qualify as a sponsor under the regulation. However, each claim must be well-grounded in fact. *See Jandrt v. Jerome Foods, Inc.*, 227 Wis. 2d 531, 552, 597 N.W.2d 744 (1999).

that Leonard attributed to him, then those statements logically could not have been the basis for the Association's decision to file the complaint.

¶ 27. The Association appears to contend that it was not necessary for the trial court to determine what Strama told Leonard because only Leonard's statements to the Association's counsel are relevant in determining whether counsel made a reasonable inquiry into the facts. This position appears to assume that what Leonard told counsel is undisputed, but the Association refers us to no evidence of what Leonard told counsel about his conversations with Strama. The Association's position also assumes it may not be sanctioned under WIS. STAT. § 802.05 because it did not sign the complaint. However, § 802.05(1) allows fees to be assessed against a "the person who signed the pleading . . . or on a represented party, or on both." Section 802.05(1)(a). *See also Paulson v. Allstate Ins. Co.*, 2002 WI App 168, ¶ 16, 256 Wis. 2d 892, 649 N.W.2d 645.

¶ 28. In addition to assuming Leonard's versions of his conversations with Strama to be true, the trial court apparently accepted Leonard's testimony of his conversation with Schweitzer without considering Schweitzer's affidavit. Schweitzer's affidavit does not appear consistent with Leonard's testimony that, when he asked Schweitzer whether Strama had voted on matters involving Allied Health, Schweitzer answered that he was uncertain. *See supra* note 8 for a summary of Schweitzer's affidavit. At the least, Schweitzer's affidavit raises the question whether, even if Schweitzer told Leonard he was uncertain, it was reasonable for Leonard and counsel to make no further inquiry.

¶ 29. We also agree with Strama that the trial court erroneously exercised its discretion in not considering all the evidence and factors relevant to whether the Association or its counsel made a reasonable investigation into the facts. After accepting Leonard's version of his conversations with Strama and with Schweitzer, the court concluded the Association had acted reasonably in deciding it had to file suit to "get to the bottom of its suspicions." The Association agrees with Strama that there was no need to file the complaint by any particular time and that the factual foundation for the complaint was not complex, and presumably the trial court was of the same view. Nonetheless, the court did not mention in its analysis the evidence indicating that a reasonable effort would have yielded—from sources other than Strama and Leonard—the information that Strama was not involved in approving CE programs for Allied Health. *See supra* note 8.

¶ 30. However, we do not agree with Strama that we can determine as a matter of law that there was not a reasonable prefiling factual investigation. As we have already indicated, there are factual disputes concerning Leonard's conversations with Strama and with Schweitzer. In addition, some of the evidence Strama points to as supporting his position is susceptible to more than one reasonable inference, and the choice among competing reasonable inferences is for the trial court to make, not this court. *See Stern*, 185 Wis. 2d at 237. Finally, the reasonableness of the prefiling factual inquiry is committed to the trial court's discretion. *Jandrt*, 227 Wis. 2d at 548–49. Accordingly, we conclude it is necessary to remand for an evidentiary hearing at which the trial court can take testimony, resolve all

863

relevant factual disputes, and decide in the proper exercise of its discretion whether the there was a reasonable prefiling inquiry into Strama's involvement in the CE approval process for Allied Health programs.

B. *Wis. Stat. § 802.05(1)—Not Used for Any Improper Purpose*

¶ 31. Strama contends the trial court erred in determining the Association did not use the complaint for an improper purpose because the court did not consider all the relevant evidence, and, alternatively, the court erred in resolving factual disputes without an evidentiary hearing.

■■■■

¶ 32. The Association responds that the trial court's determination that the complaint was not used for an improper purpose is correct on an alternative ground: there is no evidence that the Association's counsel intended to injure or harass Strama by filing the complaint, and counsel, not the Association, signed the complaint. However, as we have already stated, Wis. Stat. § 802.05(1) expressly authorizes sanctions against a represented client who has not signed the pleading. In addition, the signature of the signing attorney is a "certificate that . . . the pleading . . . is not used for any improper purpose." Section 802.05(1)(a). This language does not require that the signing attorney personally have the improper purpose. Thus, lack of evidence that a signing attorney was or should have been aware the client was using the complaint for an improper purpose does not as a matter of law result in the conclusion that

the complaint was not used for an improper purpose, although it is relevant to the question of whom to sanction.[10]

¶ 33. We conclude there are factual disputes on the question whether the complaint was used for an improper purpose that require an evidentiary hearing. First, the trial court erroneously viewed it as necessary to accept the Association's version of the facts on how the ICA came to republish the Association's news release to its members. Second, while the court mentioned the fact of the Association's news release, it did not explain why it did not consider this as evidence that the Association intended to injure Strama. The Association argues in its brief that the release did not mention Strama by name. However, it is certainly a reasonable inference that Association members would know that Strama was chairman of the Board and would understand this sentence in context to refer to Strama and to charge him with unethical conduct: "The ethics laws prohibit a member of the examining board from using their position on the board to benefit an organization of which they are a mem-

---

[10] We observe that in the context of WIS. STAT. § 814.025(3)(a), we have affirmed sanctions against an attorney when the trial court found the attorney was aware or should have been aware that the client was commencing and continuing certain claims for the sole purpose of harassment and intimidation. *Elmakias v. Wayda*, 228 Wis. 2d 312, 321–23, 596 N.W.2d 869 (Ct. App. 1999). We do not understand Strama to be arguing that there is evidence from which a reasonable fact finder could infer that the Association's counsel was aware or should have been aware that the Association was using the complaint for an improper purpose.

865

ber."[11] The Association apparently sent this release to all its members on the day it filed the complaint, before it had undertaken any discovery to learn whether Strama had in fact been involved in approving CE seminars for Allied Health. If, as the Association contends and the trial court concluded, the Association reasonably believed it was necessary to file suit to get accurate information about Strama's role in approving CE seminars, this question arises: why did the Association send this release before getting accurate information? One reasonable inference is that the Association filed the complaint against Strama not to obtain accurate information about his role but to injure his reputation. We do not, however, agree with Strama that this is the only reasonable inference, which is why an evidentiary hearing is necessary.[12]

---

[11] The first paragraph of the release reads:

> Today, the WCA filed a lawsuit against the Chiropractic Examining Board over the board's failure to properly enforce the ethics laws of the state. The ethics laws prohibit a member of the examining board from using their position on the board to benefit an organization of which they are a member. Specifically, the Examining Board has approved continuing education programs that benefit Allied Health of Wisconsin even though the chairman of the Examining Board is a member of Allied. The lawsuit asks that the Examining Board properly enforce the ethics rules and that CE hours not be allowed for CE programs that have been improperly approved.

[12] Whether an inference is reasonable is a question of law, as is whether there is more than one reasonable inference, and therefore these are determinations for this court to make de novo. *See Stern v. Thompson & Coates, Ltd.*, 185 Wis. 2d 220, 237, 517 N.W.2d 658 (1994). However, which inference to draw when more than one is reasonable is for the trial court to decide. *See id.*

¶ 34. The Association objects to consideration of its news release as evidence of its purpose because, it asserts, Wis. Stat. § 802.05 does not authorize sanctions for misconduct unrelated to signing pleadings. The Association relies on *Christian v. Mattell, Inc.*, 286 F.3d 1118 (9th Cir. 2002). In that case, the court, applying the counterpart federal rule, reversed and remanded because it appeared the trial court may have sanctioned the attorney for conduct in discovery and hearings, which was outside the scope of the federal rule. *Id.* at 1130–31. However, Strama is not asking the court to sanction the Association for its news release, but, rather, to consider the news release as evidence that the Association filed the complaint against Strama to injure his reputation.[13]

## II. Continuing the Action

### A. *Wis. Stat. § 814.025(3)(b)—No Reasonable Basis in Law or Equity*

¶ 35. Strama contends the court erred in deciding that the Association and its counsel acted reasonably in maintaining its claim against Strama until September 26, 2002, when it voluntarily moved for dismissal. His

---

[13] Strama also argues the trial court did not consider the evidence that Leonard received 35% of all the profits of the CE programs sponsored by the Association when deciding whether the complaint against Strama was used for an improper purpose. However, in his brief in the trial court, Strama did not offer that testimony as evidence of an improper purpose, but as evidence undermining Leonard's credibility. We therefore cannot conclude the trial court erred in not considering evidence of Leonard's financial interest in deciding whether the complaint was used for an improper purpose. However, on remand Strama will have the opportunity to ask the trial court to consider that evidence for that purpose.

position is that the Association did not have a reasonable basis for continuing the action after he filed the motion to dismiss on August 14, 2002, with his and two other affidavits averring he had no involvement in approving any CE programs. Instead of dismissing the complaint against him then, Strama points out, the Association took the following actions before dismissal: filed a motion to require the defendants to answer, to extend time for briefing Strama's motion, and to hold a scheduling conference, to which Strama and the Board objected in a brief; submitted written discovery requests; deposed a Board member, Beverly Sleight, and the two persons who filed affidavits in support of Strama's motion to dismiss; and filed a brief opposing Strama's motion to dismiss in which it raised the agency legal theory.

¶ 36. The trial court's conclusion that the Association and its counsel acted reasonably in continuing the action until September 26, 2002, is based in large measure on its determination that they acted reasonably in filing the action to conduct discovery to determine Strama's involvement in CE program approvals. Because we have held the trial court erroneously exercised its discretion in arriving at that determination, we conclude its determination on the reasonableness of continuing the action to conduct discovery must be reversed as well. At the evidentiary hearing on remand, the trial court should consider Strama's claim for fees under WIS. STAT. § 814.025(3)(b) in light of the factual findings and discretionary decision the court makes regarding the prefiling factual investigation required by WIS. STAT. § 802.05(1).

¶ 37. In evaluating on remand Strama's claim that the action was continued in violation of WIS. STAT.

§ 814.025(3)(b), the trial court will need to address the Association's agency legal theory. As the trial court correctly noted, the factual underpinning for this theory does not depend upon Strama's involvement in approving CE programs sponsored by Allied Health. Rather, according to this theory, Strama's membership on the Board, in and of itself, creates a conflict of interest even if the approval process is conducted by staff or other board members. In other words, as we understand this theory, the Board always has a conflict of interest on any decision it makes if a member has a conflict of interest on the subject of the decision, even if that member has no role in the decision. Thus, as we understand the Association's position, even if the Association and its counsel should have reasonably known from Strama's motion to dismiss and accompanying affidavits that there was no factual basis for a legal theory that depended on his personal involvement, there was a factual basis for continuing the suit based on the agency legal theory.

¶ 38. The trial court stated that the Association "legitimately" believed that Strama's membership on the Board in itself constituted a conflict of interest with respect to the approval of CE seminars sponsored by Allied, but did not discuss the legal theory further, other than to state that the fact that it was "later shown to be incorrect" does not make it frivolous. It is true that a legal theory does not violate Wis. Stat. § 814.025(3)(b) solely because a court decides it is not correct. *See Stern*, 185 Wis. 2d at 243. However, the trial court did not analyze this theory to determine its correctness as a matter of law. Nor did the trial court explain why, even if incorrect, the Association and its counsel could have reasonably believed this theory had a reasonable

basis in law for a claim against Strama (as distinct from the Board) or "could be supported by a good faith argument for an extension, modification or reversal of existing law." Section 814.025(3)(b). Neither of the parties have briefed the merits or the frivolousness of this legal theory on appeal.[14] We therefore conclude the appropriate course is for the trial court on remand to decide whether this legal theory is frivolous within the meaning of WIS. STAT. § 814.025(3)(b) in the context of deciding whether the Association and counsel acted reasonably in continuing the action after Strama filed his motion to dismiss.

B. *WIS. STAT. § 814.025(3)(a)—Bad Faith*

¶ 39. Strama contends the undisputed facts show that the Association continued this action in bad faith. He points to the same procedural facts he relies on under WIS. STAT. § 814.025(3)(b) and to what he characterizes as the Association "changing" its legal theory to one not dependent on Strama's personal involvement, instead of dismissing the action after receipt of Strama's motion.

¶ 40. The trial court did not separately discuss whether the action was continued in violation of WIS. STAT. § 814.025(3)(a), although it is evident from the arguments presented and the whole of the court's opinion that the court decided it was not. Because that decision apparently depends at least in part on a factual

---

[14] We agree with the Association that the manner in which Strama addresses this agency legal theory on appeal is confusing. We therefore do not fault the Association for not addressing the merits of this theory in its responsive brief other than asking us to affirm the trial court's conclusion that there was a reasonable basis in law for this theory.

and legal analysis that we have already held contains errors, we conclude we must reverse and remand for a determination whether Strama is entitled to attorney fees under § 814.025(3)(a).

¶ 41. We do not agree with Strama that we can decide this issue as a matter of law. Although the procedural facts are undisputed, they may allow for competing reasonable inferences depending on the findings of fact, the discretionary determinations, and the conclusion on the agency legal theory that the court makes under the other statutory sections. A resolution under WIS. STAT. § 814.025(3)(b) requires findings on the state of mind of Leonard and, perhaps, others connected with the Association, and this requires drawing inferences from what the person said and did in view of surrounding circumstances. *Stern,* 185 Wis. 2d at 236–37. The fact that a party or attorney may have continued an action in violation of para. (3)(b) does not necessarily mean the party violated para. (3)(a). *Id.* at 239. In addition, we observe that under this paragraph the bad faith must be "*solely* for purposes of harassing or maliciously injuring another." Section 814.025(3)(a) (emphasis added). Fact finding is necessary to determine not only whether the Association continued the action for one of these purposes, but also whether that was the sole purpose.

## CONCLUSION

¶ 42. We reverse the trial court decision and order denying Strama's motion for attorney fees under WIS.

Stat. §§ 802.05(1) and 814.025(3)(a) and (b) and remand for an evidentiary hearing consistent with this opinion.[15]

*By the Court.*—Order reversed and cause remanded with directions.

---

[15] Strama requests attorney fees for this appeal under Wis. Stat. § 809.25(1) and (3). Section 809.25(1) authorizes this court to allow costs on appeal, with costs defined in § 809.25(1)(b). That definition does not include attorney fees. Section 809.25(3) authorizes this court to award attorney fees to the successful party when an appeal or cross-appeal is frivolous. This section has no application here, where Strama himself is the appellant and has obtained a reversal and remand. Strama also relies on *Riley v. Isaacson*, 156 Wis. 2d 249, 456 N.W.2d 619 (Ct. App. 1990). In *Riley*, we held that, if on appeal from a trial court's determination that a claim was frivolous we conclude the trial court was correct, then the appeal is per se frivolous. *Id.* at 262. Again, this has no application to Strama's appeal or to the Association's response.